[S. F. No. 8676.   In Bank.—December 26, 1918.]

In the Matter of the Estate of FREDERICK WILLIAM SHARON, Deceased. FREDERICK WALLACE SHARON, Appellant, v. LOUISE TEVIS SHARON, as Executrix, etc., et al., Respondents.

ADOPTION—STATUTORY RIGHT—STRICT COMPLIANCE WITH STATUTE.—The right to adopt a child and the right of a person to be adopted as the child of another are wholly statutory, and unknown to the common law, and he who claims that an act of adoption has been accomplished must show that every essential requirement of the statute has been strictly complied with.

ID.—NATURE OF PROCEEDING—JURISDICTIONAL REQUIREMENTS.—An adoption proceeding is essentially one of contract between the parties whose consent is required, and the law has wisely thrown around its creation certain safeguards, by requiring, not only that it shall be entered into in the presence of a judge, but also that it shall receive his sanction, which is not to be given until he has satisfied himself that the person adopting is ten years older than the child, that all the parties whose consent is required have given such consent fully and freely to the making of the contract, and that the adoption contemplated by the contract will be for the best interest of the adopted child.

ID.—LAW OF 1892.—Under the law in force in 1892, the following things were necessary to a valid adoption, namely, the consent of the wife of the adopting party, if a married man, not lawfully separated from his wife, and she be capable of consenting; the consent, in writing, duly acknowledged, of the mother of the child, or due proof that she had abandoned the child; the agreement of the adopting party, signed in the presence of the judge of the superior court of the county in which said party then resided, to the effect that the child should be adopted by him and treated in all respects as his own lawful child should be treated; the consent of the child, in writing, signed by him before the judge, to the adoption, if over the age of twelve years; and the examination by the judge of the

persons required to appear before him, his decision therefrom that the interests of the child would be promoted by the proposed adoption, and the making of an order by the judge declaring that the child should thenceforth be regarded and treated in all respects as the child of the adopting party.

ID.—Destruction of Adoption Papers—Proof by Secondary Evidence—Code Presumptions Insufficient.—Where papers and proceedings for adoption have been destroyed, secondary proof thereof is admissible, but such proof is not sufficiently made by the mere presumptions stated in subdivisions 15 and 16 of section 1963 of the Code of Civil Procedure "that official duty had been regularly performed," and "that a court or judge, acting as such, whether in this state or any other state or country, was acting in the lawful exercise of his jurisdiction."

ID.—Jurisdiction in Adoption Cases.—Jurisdiction in cases of adoption, although the court be one of general jurisdiction, must appear by the record, as to both subject matter and person, and the judge so acting is to be regarded and treated in that respect as a court of limited and special jurisdiction.

ID.—Inferior Tribunal—Jurisdictional Facts—Burden of Proof.—Where one relies on an adjudication of a tribunal of limited or special jurisdiction, he must show affirmatively every fact necessary to confer jurisdiction.

ID.—Nature of Proof.—Jurisdictional facts must be proven, either by the record or by other evidence, and neither the fact that a judgment or order was made and that it appeared on the record, nor the presumption that official duty has been regularly performed, is sufficient proof of the jurisdiction of an inferior tribunal.

ID.—Jurisdictional Facts—Manner of Proof—Presumptions.—The provisions of subdivisions 15 and 16 of section 1963 of the Code of Civil Procedure are not to be construed to dispense with the necessity of proof of the facts essential to the jurisdiction of an inferior court or tribunal, and that they apply only to the acts of such inferior court after jurisdiction of subject matter and person has attached.

ID.—Proceeding on Partial Distribution of Estate—Claim of Alleged Adopted Son—Evidence—Failure to Prove Adoption.—In a proceeding for the final distribution of the estate of a deceased person wherein the right of an alleged adopted son of the deceased to have distributed to him a part of the estate was contested on the ground that he was not such an adopted son, and it was admitted that the papers and proceedings for the adoption had been destroyed, there was an utter failure of proof as to such adoption where no copy of any paper was proven or offered or testimony given as to the contents, substance, or effect of any writings, and it

was shown by extrinsic evidence that at the time of the alleged adoption the person adopting was a resident of another state, and that his wife, who was capable of consenting and not separated from her husband, did not sign a consent thereto, and no testimony given that the alleged son, who admitted that he was over twelve years of age at the time of the alleged adoption, had given his written consent to the adoption.

VERDICT—POWER OF COURT TO DIRECT.—In a proper case the trial court has full power to direct the jury to render a verdict, and this power exists in favor of the defendant where there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case.

ID.—REFUSAL TO RETURN DIRECTED VERDICT—PROCEDURE.—Where the jury is directed to return a verdict and a part of the jury refuses to obey the order, the court is not confined to a proceeding against the refractory jurors for contempt to enforce its order, but may direct the members of the jury not refusing, to return the verdict, and in such a case the polling of the jury is a useless ceremony.

ID.—DIRECTED VERDICT—DECISION UPON MERITS.—A directed verdict is a decision upon the merits of the case, and is a bar to another action for the same cause.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco in the matter of the estate of a deceased person. J. V. Coffey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dozier & Dozier, Jacobs & Oliver, and James M. Oliver, for Appellant.

Garret W. McEnerney and William F. Herrin, for Respondents.

SHAW, J.—In a proceeding in the superior court of the city and county of San Francisco for the final distribution of the estate of Frederick William Sharon, deceased, the appellant, Frederick Wallace Sharon, appeared and filed an answer to the petition for distribution, alleging that he was an adopted son, and the only child, of said decedent; that he was not mentioned in the will of said decedent, and that by virtue of his relation as adopted son he was entitled to one-half of the estate, and asking that the same be distributed to him.

CLXXIX Cal.—29

The ,widow, Louise Tevis Sharon, and the beneficiaries under the will of decedent, took issue upon the allegations of this answer. A jury was demanded by the appellant and the case proceeded to trial. At the close of the evidence the respondents moved the court to direct the jury to render a verdict in favor of the respondents, and against the appellant, on the issues raised by his answer. The court sustained this motion and directed the jury to return a verdict accordingly. Thereupon, nine of the jurors refused to agree to such verdict. The court then designated one of the remaining three jurors to act as foreman and under the directions of the court he signed a verdict in accordance with the order. This verdict was then filed. The appellant's counsel then asked that the jury be polled. This demand was refused by the court. A decree of distribution was thereupon entered, refusing any share of the estate to the appellant and distributing it all in accordance with the provisions of the will of decedent. The appeal is from this decree.

The answer of the appellant alleged that in July, 1892, he was under twelve years of age; that the decedent was then thirty-three years of age, and was then residing in the city and county of San Francisco, and that said decedent then adopted the appellant as his son by proceedings legally had before Honorable Walter H. Levy, then one of the judges of said superior court; that at said time said decedent was the husband of Louise Tevis Sharon; that the mother of the appellant had abandoned him and was in the Republic of Mexico; that the father of the appellant was dead; that the said decedent appeared before said judge and executed, an agreement to the effect that the appellant should be adopted and treated by him in all respects as his own lawful child should be treated; that Louise Tevis Sharon, the wife of said decedent, was at that time absent from the state of California; that her consent, in writing, duly acknowledged, was produced and filed by said decedent; that the said judge then separately examined said decedent and the appellant and after such examination made an order wherein he found that the interests of the appellant would be promoted by his adoption by said decedent, and declared that the appellant should thenceforth be regarded and treated in all respects as the child of said decedent,

The appellant was a son of John W. Sharon, who was a cousin of Senator William Sharon, the father of decedent. At the time of the alleged adoption, the decedent, Frederick William Sharon, had one child, a son about seven years of age, and was a resident of the city of New York, but he and his wife were then visiting in California. From June 27, 1892, until August 30, 1892, his wife, his child, with a governess and maid, were living in rooms at the Del Monte Hotel, in Monterey County, California. The decedent was at the hotel at intervals during that time and at other times was in San Francisco at the Palace Hotel. Senator William Sharon, shortly before his death, which occurred in 1885, conveyed all his estate to trustees, in trust for the period of ten years following his death, one-third for said decedent, who was his son, one-third for his daughter Florence, Lady Hesketh, and one-third to the children of his deceased daughter, Mrs. Newlands. This estate was very large, amounting to several millions of dollars, and during the year 1892 it was managed by Mr. Newlands, then the sole trustee.

In support of the above allegations as to the adoption papers and proceedings, testimony was given by the appellant and two other witnesses, namely, George S. McComb and William J. Heney. McComb testified that he was a deputy clerk of said superior court during the years 1891 and 1892; that he was acting as courtroom clerk for Judge Troutt at that time; that in 1892, while passing along the corridor of the city hall, he was called into the department presided over by Judge Levy, to act as clerk upon an *ex parte* motion, the regular courtroom clerk of said court not being then present; that he went into the courtroom and sat down; that Judge Levy came out of his chambers with three or four other people, among them a boy ten or twelve years of age, and that an attorney handed to the judge a petition for adoption; that one of the persons was then sworn, gave his name as F. W. Sharon, his testimony was taken, and the judge interrogated the boy; that the judge then said, "Take your order," or "The petition is granted," or some similar words, directed the witness to make a minute entry of the matter, and then signed an order granting the petition; that the witness then took the papers, made an entry of the proceedings in a book called the "rough minutes," gave the papers to the judge, and saw them no more, and that some one of them requested

that the matter be kept from the public. On cross-examination he corrected his testimony as to the judge having signed any order, saying that he did not recollect that occurrence, that he did not see any written order, nor any other paper except the petition for adoption, but that he did not read the petition and knew nothing of its contents, nor who signed it. He also retracted the statement that he made his entry on the rough minutes, saying that his impression was that he had made the entry on a loose sheet of paper and that he had placed the paper in the book of rough minutes, leaving it there for the regular clerk of the department when he should come in. This correction was made after he had been reminded that an entry in the book would have made the matter public. He did not explain how he came to know that the paper handed to the judge by the attorney was a petition for adoption. He did not testify that anyone called it by such name, or said that it was a petition for adoption. The witness, Heney, testified that in the year 1892 he was a deputy county clerk and occupied the position of filing clerk; that he remembered the proceedings in adoption mentioned by Mc-Comb; that the papers were presented to him to be filed; that, "as the usual custom was," he looked them over; that there was a petition, a consent, an agreement, and an order of adoption; that as deputy clerk he indorsed each one of these papers as filed and indexed the matter in the general index of civil actions under the name, F. W. Sharon, or Frederick W. Sharon, on each side, as the respective parties. On cross-examination he said that he did not remember what judge signed the order, nor whether it was signed by more persons than one; that he could not describe the document which he said was a consent, nor say whether it was acknowledged or not; that he had no recollection of the contents of the agreement, nor by whom it was signed, nor of anything that was in it; that he did not read it at all; that he did not read the petition, nor know anything of its contents, nor who signed it, and that he did not read the order and knew nothing of its contents. He admitted that his designation of the papers by the names above given was made either from the indorsements thereon or from his knowledge that such papers were necessary to an adoption proceeding, and not from any knowledge or recollection of their contents. The appellant testified that he was born on July 10, 1879, that a few days before

the alleged adoption proceedings, while he was living in San Francisco, he was taken from his place of abode by Alexander D. Sharon, a cousin of the decedent, to the Palace Hotel, and to a room occupied by the decedent; that the decedent there asked him if he wanted to be his, the decedent's, boy, and told him that he would see that the appellant was well taken care of, and that he was then kept at the Palace Hotel for something over two weeks, including the time of the alleged adoption; that during that period he was provided with several suits of new clothes and was taken to a dentist and to a nose specialist for medical treatment; that on a certain day, which it was claimed was July 23, 1892, the decedent asked him if he would like to be his boy, and that thereupon he, with the decedent and said Alex. D. Sharon, went to a place which he believed to be the city hall in San Francisco; that there they saw a gentleman who he believed was a judge, that the judge asked him if he wanted to be the decedent's boy, to which he answered, "Yes," that some papers were then produced and that the papers were signed before the judge and were left there, and that they then, in connection with those papers, went to another room in the building.

This was all the evidence in proof of the papers and proceedings for the alleged adoption. There was no evidence that Louise Tevis Sharon, the wife of the decedent, was then absent from the state of California, or that she was lawfully or otherwise separated from him, or that she was not capable of giving her consent. On the contrary, the evidence was undisputed to the effect that she was not separated from her husband, that she was then within the state, and that she was capable of giving consent. There is no evidence that the appellant himself signed a consent to the adoption.

There was evidence tending to prove that prior to the alleged adoption the decedent had formed a purpose to adopt the appellant as his son, and had told the appellant of that intention, and other evidence, apparently intended as corroborative proof, which it is claimed tends to show that the decedent had thereafter in some respect treated the appellant as a child of his own. The appellant was kept in a boarding-school for about four years thereafter and supported for some six months longer in Arizona, where he was sent because he was afflicted with tuberculosis. The appellant contends that his expenses during all this period were paid by the decedent.

But the evidence is almost conclusive that the expenses were paid out of the funds belonging to the Sharon trust above mentioned, and charged to all the beneficiaries. At all events it comes far short of proving that the decedent, after the alleged adoption, regarded and treated the appellant as his own child should have been treated. He did not treat him as he treated his own child, then living. He never took the appellant into his family, nor associated with him in any way, and in fact he never thereafter spoke to the appellant or communicated with him in any manner whatever. As corroboration of the fact of a valid adoption, the evidence could not well have been weaker without being absolutely immaterial and irrelevant.

The right to adopt a child, and the right of a person to be adopted as the child of another, are wholly statutory. Such right is unknown to the common law. He who claims that an act of adoption has been accomplished must show that every essential requirement of the statute has been strictly complied with. (*Ex parte Clark,* 87 Cal. 641, [25 Pac. 967] ; *In re Stevens,* 83 Cal. 331, [17 Am. St. Rep. 252, 23 Pac. 379].) In *Estate of Johnson,* 98 Cal. 531, 538, [21 L. R. A. 380, 33 Pac. 460], after careful consideration of the question as to what requirements are essential, the conclusion was stated as follows: ''The proceeding is essentially one of contract between the parties whose consent is required. It is a contract of a very solemn nature, and for this reason the law has wisely thrown around its creation certain safeguards, by requiring, not only that it shall be entered into in the presence of a judge, but also that it shall receive his sanction, which is not to be given until he has satisfied himself of these three things: 1. That the person adopting is ten years older than the child. 2. That all the parties whose consent is required do consent, fully and freely, to the making of such contract. 3. That the adoption contemplated by the contract will be for the best interest of the child adopted.'' These requirements are there held to be jurisdictional. Unless they coexist, the proceeding for adoption is insufficient, the attempted contract is invalid, the judge is without power to approve it, and there is no lawful adoption. (*Ex parte Chambers,* 80 Cal. 219, [22 Pac. 138] ; *Ex parte Clark, supra; In re Stevens, supra; Matter of Cozza,* 163 Cal. 522, [Ann. Cas. 1914A, 214, 126 Pac. 161] ; *Estate of McCombs,* 174 Cal. 214, [162 Pac. 897].)

Under the law in force in 1892, and upon the undisputed facts of this case, the following things were necessary to make the alleged adoption valid: 1. The consent of the wife of the decedent, signed in the presence of the judge. (Civ. Code sec. 223; sec. 226 as amended in 1880, Amendts. 1880, p. 4.) 2. The consent in writing, duly acknowledged, of the mother of the child, or due proof that she had abandoned said child. (Civ. Code, sec. 224; Stats. 1891, p. 24.) 3. The agreement of the decedent, signed in the presence of the judge of the superior court of the county in which the decedent then resided, to the effect that the child should be adopted by him and treated in all respects as his own lawful child should be treated. (Civ. Code, sec. 226 as amended in 1880, *supra.*) 4. The consent of the appellant, in writing, signed by him before the judge, to the adoption, he being then thirteen years of age. (Civ. Code, secs. 225, 226.) 5. The examination by the judge of the persons required to appear before him as aforesaid, his decision therefrom that the interests of the child would be promoted by the proposed adoption, and the making of an order by said judge declaring that said child should thenceforth be regarded and treated in all respects as the child of Frederick William Sharon. (Civ. Code, sec. 227.)

We find in the evidence no proof whatever of such papers and proceedings for the adoption of the appellant by the decedent. If the documents have been destroyed, as it is admitted was the case here, if they ever existed, secondary proof thereof would be admissible. Without such secondary proof the adoption cannot be said to have been proven. There was no such secondary proof. No copy of any paper was proven or offered. No witness testified to the contents of any of the supposed papers, nor gave evidence as to the substance thereof. The witnesses, McComb and Heney, each testified that he had not read any of the papers and did not know the contents thereof. Neither of them said that he had heard any paper read or that any of the persons present had stated the character or contents of any paper. Heney testified that there was a petition, a consent, an agreement, and an order. As he did not read either of them nor know their contents, his knowledge of their character must have been derived wholly from the indorsements thereon or from the title on the inside, although he does not say that he read such indorsements or

titles, but leaves that to be inferred from his rather evasive statement that "as the usual custom was, I looked them over." There was no attempt to show what evidence was produced to the judge, upon which the alleged order was given. The appellant does not contend that there was any proof of the contents of any of these essential documents, except a certain proof which he claims arises by presumption. The presumptions upon which he rests his case are those stated in subdivisions 15 and 16 of section 1963 of the Code of Civil Procedure; "that official duty has been regularly performed," (subdivision 15), and "that a court or judge, acting as such, whether in this state or any other state or country, was acting in the lawful exercise of his jurisdiction." (Subdivision 16.)

No case has been cited by appellant, and we know of none existing, wherein these presumptions have been given such effect. Appellant cites *Matter of Warfield*, 22 Cal. 64, [83 Am. Dec. 49], *Posten* v. *Rassette*, 5 Cal. 469, *Mandeville* v. *Reynolds*, 68 N. Y. 533, *Estate of Edwards*, 58 Iowa, 431, *Croom* v. *Winston*, 18 Tex. Civ. App. 1, [43 S. W. 1072], and *Leland* v. *Cameron*, 31 N. Y. 115. None of them goes as far as it would be necessary to go in this case if we should hold that this proof established the existence, contents, and legal sufficiency of the instruments of writing, and the other facts necessary to the validity of the alleged order of adoption. In the Warfield case, the petition for the probate of a will was missing from the files. It was referred to, however, in the other papers on file and in the records of the case, and the executor testified that he had signed and sworn to a petition for the probate of the will and that he could not tell what else it contained. Upon all the evidence the court held that the existence and contents of the petition were satisfactorily established. In *Posten* v. *Rassette* a power of attorney had been burned. Two witnesses, who were accustomed to draw such powers, each testified that he had seen and read the document and stated its substance and effect. It was said that the mere fact that they could not recite its contents word for word did not render their testimony inadmissible or ineffectual and that the existence and contents of the power were proved by their testimony. In *Leland* v. *Cameron* an execution on which a sale of land had been made was lost. Its issuance and contents were the facts to be proven. The attorney who had entered up the judgment was dead, but on

his law register, among other entries of the proceedings in the case, was this: "*Fi. fa.* issued December 19, 1816, to Mc-Clure." The sheriff's deed recited the delivery of the execution to the sheriff. The court held that the entry on the attorney's register was admissible as a contemporaneous memorandum of the fact of the issuance of the execution, and that as the law fixed the contents of an execution and the data for making it up were contained in the judgment, the contents and issuance of the execution were sufficiently proven. In each of the other cases the substance and effect of a judgment of a court of general jurisdiction, the entry of which had been lost, were proven by means of entries in the judgment-book and in the judge's docket, showing briefly the character and effect of the judgment and the rendition thereof. In the Edwards case and also in *Croom* v. *Winston,* evidence of that character was supplemented by testimony of witnesses to the contents of the pleadings.

Here we not only have no writings of any kind, but we have no testimony as to the contents, the substance, or the effect of any of the writings claimed to have existed.

In *Ex parte Clark, supra,* the court says that "jurisdiction in such cases, although the court be one of general jurisdiction, must appear by the record, as to both subject matter and person"; and that the judge so acting is to be regarded and treated in that respect as a court of limited and special jurisdiction. All the other decisions where the subject was involved assume that this is the rule applying to adoptions. (*Estate of McKeag,* 141 Cal. 406, [99 Am. St. Rep. 80, 74 Pac. 1039]; *Estate of Camp,* 131 Cal. 470, [82 Am. St. Rep. 371, 63 Pac. 736]; *Estate of Williams,* 102 Cal. 70, [41 Am. St. Rep. 163, 36 Pac. 407]; *Ex parte Johnson, supra.*) The rule established by many decisions in this state is that where one relies on an adjudication of a tribunal of limited or special jurisdiction, he "must show affirmatively every fact necessary to confer such jurisdiction." (*Rowley* v. *Howard,* 23 Cal. 401; *Newman* v. *Barnet,* 165 Cal. 425, [132 Pac. 588]; *Swain* v. *Chase,* 12 Cal. 285; *Ex parte Kearny,* 55 Cal. 217; *Cardwell* v. *Sabichi,* 59 Cal. 493; *Kane* v. *Desmond,* 63 Cal. 466; *Jolley* v. *Foltz,* 34 Cal. 326; *Ex parte Greenall,* 153 Cal. 770, [96 Pac. 804]; *Ferguson* v. *Basin Con. Mines,* 152 Cal. 715, [93 Pac. 867]; *Eltzroth* v. *Ryan,* 89 Cal. 140, [26 Pac. 647]; *Keybers* v. *McComber,* 67 Cal. 396, [7 Pac. 838]; *King*

v. *Randlett*, 33 Cal. 322; *Lowe* v. *Alexander*, 15 Cal. 301.)
In many of these cases the record of the inferior court failed
to recite some jurisdictional fact. This, of itself, does not
make the judgment void, for extrinsic evidence is admissible
to prove such fact, except where some statute makes the record
the exclusive mode of proof. (*Jolley* v. *Foltz, supra.*) But·
if the presumptions of subdivisions 15 and 16 of section 1963
have the effect now claimed for them, no extrinsic proof would
have been necessary. The fact that the inferior tribunal
acted would have raised the presumption that the jurisdic-
tional fact existed. Itsʹ action would have proved its juris-
diction; yet, in all of the cases it is held that the jurisdic-
tional facts must be proven, either by the record, or by other
evidence. In no case has it been held that the fact that a
judgment or order was made and that it appeared on the
record, or the presumption that official duty has been regu-
larly performed, was sufficient proof of the jurisdiction of an
inferior court or tribunal.

The conclusion necessarily follows that these provisions of
section 1963 are not to be construed to dispense with the
necessity of proof of the facts essential to the jurisdiction
of an inferior court or tribunal, and that they apply only
to the acts of such inferior court after jurisdiction of subject
matter and person has attached. When jurisdiction has been
acquired to do the thing, all proceedings in the exercise
thereof are presumed to have been lawfully done, unless the
contrary is shown. The authorities uniformly limit the ap-
plication of the presumption in this manner. "While the law
will presume in favor of the regularity of an official's act, it
will not by such presumption supply the necessary jurisdic-
tional facts." (1 Jones on Evidence sec. 45a.) "When the
necessary facts of jurisdiction are established, the same as-
sumption is made in favor of the judicial proceedings of
judges of inferior courts," says Mr. Chamberlayne, speaking
of the presumption that courts act in the lawful exercise of
their jurisdiction. (2 Chamberlayne on Evidence, sec. 1206;
Best on Evidence, 10th ed., sec. 361; *King* v. *All Saints*, 7
Barn. & C. 790, [108 Eng. Rep. 918]; *Kuker* v. *Biendorff*, 63
Neb. 91, [88 N. W. 190]; *Wight* v. *Warner*, 1 Doug. (Mich.)
387; *Fell* v. *Philadelphia*, 81 Pa. 75; *Fowler* v. *Jenkins*, 28
Pa. 178; *Ex parte Lange*, 197 Fed. 771.)

The presumption being thus ineffectual as proof, nothing remains of the appellant's case. The extrinsic evidence bearing directly on the facts essential to jurisdiction and to the effect that they did not exist was clear and convincing. Frederick William Sharon was shown to have been a resident of New York. Consequently no judge of the superior court of any county of California could have had jurisdiction of the subject matter of an adoption by him. (*Ex parte Clark,* 87 Cal. 640, [25 Pac. 967]; *Estate of Williams,* 102 Cal. 77, [41 Am. St. Rep. 163, 36 Pac. 407].) The appellant admitted that he was over twelve years of age at the time and he did not testify that he signed a consent to the adoption and produced no evidence to that effect. The wife of the decedent was capable of consenting, was not separated from her husband, was then in California, and she did not sign a consent thereto. It follows that even if the judge did make an order, as claimed, it was wholly void.

In *Ex parte Williams, supra,* it was held that the only writings necessary to an adoption are the consent of the parties whose consent is necessary, the agreement of the adopting parent or parents and the order of the judge, and that the existence of the other matters required may be shown by extrinsic evidence. If this be so, then of necessity the non-existence of such other matters could be shown in proof of the invalidity of the order. Hence, proof of the facts of the residence and age of the parties concerned was proper.

From the foregoing it is clear that the appellant utterly failed to prove the allegation that he was an adopted child of the decedent. The result is that he was not entitled to distribution of any part of the estate. Some minor objections remain to be disposed of.

It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant where there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one. There are numerous decisions to this effect. We cite the following: *Estate of Baldwin,* 162 Cal. 473, [123 Pac. 267]; *Sill* v. *Ceschi,* 167 Cal. 704, 706, [140 Pac. 949];

*Estate of Caspar,* 172 Cal. 150, [155 Pac. 631]; *Jacobson* v. *Northwestern etc. Co.,* 175 Cal. 468, 473, [166 Pac. 3]; *Perera* v. *Panama-P. I. E. Co., ante,* p. 63, [175 Pac. 454]. Many other cases supporting the rule are cited in the Baldwin case. This rule would sustain the action of the court below even if it were conceded that there was some conflict in the evidence relating to the jurisdictional facts essential to a valid adoption. The conflict, if any, was beyond question not substantial, but was a mere shadow of form without substance. The objection that the court had not the power is consequently without merit.

It is contended that the court erred in the manner of obtaining the verdict after its direction therefor had been given. The claim on this point is that where a part or all of the jury refuse to obey the order, the only method by which the court can enforce it is by proceeding against the refractory jurors for contempt. It is obvious that this might easily prove ineffectual or impracticable, for in such event the refractory jurors would be able to compel a new trial and thus defeat the exercise by the court of a power which it clearly possesses. The objection is untenable, both on principle and by authority. It is based on a misconception of the theory upon which the power rests. The jury can decide facts alone. They are bound by the directions of the court as to the law and must follow those directions. A verdict is directed by the court because the evidence is such that the court can say, as a matter of law, that no other verdict is reasonably possible. The direction to render a verdict in favor of one party is the decision by the court upon a question of law. Such decisions are within the exclusive province of the court. In giving a verdict upon such an order the jurors do not exercise discretion, but act ministerially as the instrument by which the court prepares the record which will support the only judgment that can lawfully be given. They are no more at liberty to refuse obedience than is the clerk when he is directed to do the ministerial act of entering an order or judgment of the court. The verdict so signed by one of the jurors who is appointed as foreman by the court and who signs in obedience to the order, though in form the act of the jury, is really and in law the act of the court. It is needless to elaborate further on these propositions; they are fully sustained by the authorities. (*Curran* v. *Stein,* 110 Ky. 103, [60 S. W.

839]; *Cahill* v. *Chicago etc. Co.,* 74 Fed. 290, [20 C. C. A. 184]; *Cloquet Lumber Co.* v. *Burns,* 207 Fed. 50, [124 C. C. A. 600]; *Pardee* v. *Orvis,* 103 Pa. 451; *Moore* v. *Petty,* 135 Fed. 675, [68 C. C. A. 306]; *Bryan* v. *Louisville etc. Co.,* 244 Fed. 650, [157 C. C. A. 98].)

In such a case the polling of the jury is a mere useless ceremony and the law does not require it. (*Donoghue* v. *Indiana etc. Ry. Co.,* 87 Mich. 13, [49 N. W. 512]; *Kinser* v. *Calumet etc. Co.,* 165 Ill. 505, [46 N. E. 372]; *Jameson* v. *Officer,* 15 Tex. Civ. App. 212, [39 S. W. 190]; *McClaren* v. *Indianapolis Co.,* 83 Ind. 319, *Winn* v. *Neville,* 79 Kan. 29, [98 Pac. 272].)

After the verdict was filed and before the decree of distribution was signed or filed, the appellant filed a new answer or opposition to the distribution prayed for. It was substantially the same as the previous answer. He insists that this filing of a new answer arrested the proceedings and entitled him to another trial of his case on the merits. His theory is that the decision upon the directed verdict was not a decision upon the merits, that it does not entitle the respondents to a distribution, but merely authorizes a dismissal of the appellant upon his first answer, and, in short, that it is the equivalent of a nonsuit and does not bar a subsequent proceeding by him for the same relief. We cannot agree to this proposition. The law is well settled to the contrary. A verdict directed by the court is a decision upon the merits of the case. The one important difference in this respect between a judgment of nonsuit and a judgment on a directed verdict is that the latter is a bar to another action for the same cause, while the former is not. (*Central etc. Co.* v. *Pullman etc. Co.,* 139 U. S. 39, [35 L. Ed. 55, 11 Sup. Ct. Rep. 478, see, also, Rose's U. S. Notes]; *Morgan* v. *Chicago etc. Ry. Co.,* 83 Wis. 353, [53 N. W. 741]; *Huntt* v. *McNamee,* 141 Fed. 295, [72 C. C. A. 441]; *McCown* v. *Muldrow,* 91 S. C. 540, [Ann. Cas. 1914A, 139, 74 S. E. 386]; *Wicks* v. *Sanborn,* 72 Or. 324, [143 Pac. 1007]; *Reams* v. *Sinclair,* 97 Neb. 542, [150 N. W. 826].) The appellant relies on the case of *McKay* v. *Montana U. R. Co.,* 13 Mont. 15, [31 Pac. 999], as authority in his favor on this point. The court was there considering the manner in which the evidence should be brought up on appeal from the judgment on a directed verdict in order to present the question whether or not such direction was authorized by the evidence. The question whether or not such

judgment was on the merits and was a bar to another action was not involved. In the course of the discussion the court says that such judgment is "in effect a nonsuit." So it might be, so far as the question of presenting the evidence on appeal is concerned, but such a remark in such a case cannot be deemed a decision on the question here presented. Even if it were so regarded, it is contrary to all other authority on the point and is not sustainable on principle, and we should refuse to follow it. The result is that the verdict ended the case. The appellant was no more entitled to refile his answer and continue the litigation after the entry of such a verdict than he would have been after a verdict had been rendered voluntarily and without direction of the court. Finally, it may be said as to this, as well as to all other objections to the rulings of the court, that under the constitution as it now exists, the supreme court has a limited jurisdiction to consider evidence and determine the merits of the case. It may do so for the purpose of determining from an examination of the evidence whether or not an error as to any matter of procedure, pleading, or the admission of evidence, or in directing the jury, has resulted in a miscarriage of justice. Unless it shall find that such miscarriage has been caused thereby, the error must be disregarded and the judgment cannot be set aside on account thereof. (Const., art. VI, sec. 4½.) The evidence in this cause is of such a character that it satisfies this court that the appellant should not prevail and that no miscarriage of justice could have resulted from any ruling or proceeding of the court, of the kind above mentioned, tending to his defeat.

The decree of distribution is affirmed.

Sloss, J., Wilbur, J., Richards, J., *pro tem.,* Lorigan, J., and Angellotti, C. J., concurred.