[L. A. No. 9209. In Bank.—December 9, 1926.]

In the Matter of the Estate of FRED FLEMING, etc., Deceased. HENRIETTA FLEMING, Appellant, v. RUTH DOVER et al., Respondents.

[1] JURY TRIALS—DIRECTED VERDICT—POWER OF COURT.—It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict.

[2] ID.—JUDGMENT CONTRARY TO VERDICT.—When a motion for a directed verdict, which should have been granted, has been denied, and the verdict rendered against the moving party, it is the duty of the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, to render judgment in favor of the party aggrieved, notwithstanding the verdict.

1. See 24 Cal. Jur. 912; 26 R. C. L. 1065.
2. See 14 Cal. Jur. 980.

[3] ID.—DENIAL OF DIRECTED VERDICT—JUDGMENT AGAINST VERDICT. Assuming that a motion for a directed verdict was properly denied for the reason that the grounds on which it was based were not sufficiently stated, the court still had power to grant a motion for a judgment notwithstanding the verdict.

[4] ID.—CONFLICT OF EVIDENCE—POWER OF COURT TO DIRECT VERDICT. To deprive the court of the right to exercise its power to direct a verdict, where there is a conflict in the evidence, there must be a substantial conflict.

[5] ESTATES OF DECEASED PERSONS—WILL CONTEST—UNDUE INFLUENCE—INSUFFICIENCY OF EVIDENCE.—In this will contest it is held that the evidence was insufficient to sustain the claim that undue influence was exercised by the respondents over the mind of the deceased at the time of the execution of the will.

[6] ID.—BURDEN OF PROOF.—In a will contest where there is no evidence that the beneficiary exercised any influence over the deceased, nor sustained any confidential relation to him and did not participate in any way in procuring the execution of the will, no burden was cast upon the beneficiary to show that the will was not the result of undue influence, but the burden of proof rested upon the contestant to prove such claim; and where the evidence was insufficient to legally support a finding of undue influence, a motion for a directed verdict should have been granted.

[7] ID.—UNDUE INFLUENCE—OPPORTUNITY.—Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence in the absence of testimony showing that there was pressure operating directly on the testamentary act, and to such an extent as to affect the terms of the testament.

[8] ID.—GENERAL INFLUENCE—INSUFFICIENCY OF.—General influence not brought to bear upon the testamentary act, however controlling, is not such undue influence as will afford ground for setting aside a will of a person of sound mind.

[9] ID.—EXCESSIVE USE OF INTOXICATING LIQUOR—SUSCEPTIBILITY TO INFLUENCE.—In a will contest a claim that the will was executed under undue influence exercised by certain parties upon the decedent in the execution of the will is not sustained by showing that the latter indulged in the excessive use of intoxicating liquors and for that reason was susceptible to the direction and domination of said parties for whom he had an apparent affectionate regard, as the question is not what might have been the mental

4. See 24 Cal. Jur. 916; 26 R. C. L. 1068.
6. See 26 Cal. Jur. 764.
7. See 26 Cal. Jur. 650; 28 R. C. L. 144.
8. See 26 Cal. Jur. 651.

condition of the testator at the time of the execution of the will, but what was that condition.

[10] ID.—UNNATURAL WILL.—Even though a will could be considered unnatural, this is not sufficient to overthrow it in the face of the established fact of testamentary capacity in the decedent at the time it was executed. It is held that the will was not unnatural in this case.

(1) 38 Cyc., p. 1563, n. 68. (2) 33 C. J., p. 1185, n. 52. (3) 38 Cyc., p. 1185, n. 52. (4) 38 Cyc., p. 1568, n. 98. (5) 40 Cyc., p. 1165, n. 87. (6) 40 Cyc., p. 1150, n. 91, p. 1331, n. 40, p. 1332, n. 47. (7) 40 Cyc., p. 1144, n. 53, p. 1145, n. 54, 55, p. 1146, n. 57. (8) 40 Cyc., p. 1144, n. 52. (9) 40 Cyc., p. 1018, n. 93, p. 1146, n. 59. (10) 40 Cyc., p. 1079, n. 89.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Tobias R. Arther for Appellant.

Schweitzer & Hutton and H. F. Clary for Respondents.

WASTE, C. J.—A petition was presented in the court below for the probate of an instrument purporting to be the holographic will of the decedent, Fred Fleming, by the terms of which he bequeathed his entire estate to Ruth Dover. Henrietta Fleming, surviving mother ·of the deceased, filed a contest alleging that the decedent was of unsound mind and had not testamentary capacity, and that the will was the result of the undue influence of Ruth Dover, J. C. Duncan, and Kathryn Duncan, who were named as respondents. The matter was heard before a jury, and at the close of the contestant's opening proof the respondents moved the court for a nonsuit as to each of the grounds of contest, but the motion was denied. When the evidence was all in, and before the cause was submitted to the jury, the respondents moved the court for a directed verdict on each and all of the grounds of contest. That motion was also denied. In answer to special interrogatories submitted to it the jury found the deceased was competent, but that

10.  See 26 Cal. Jur. 688.

at the time of the execution of the will he was not free from undue influence exerted on him by the Duncans and Mrs. Dover. The respondents thereupon moved for a judgment notwithstanding the verdict of undue influence, and the motion was granted. The will was admitted to probate, and the respondent J. C. Duncan was appointed administrator. The contestant has appealed, claiming that the motion for a directed verdict was properly denied, and that the lower court therefore erred in subsequently granting the motion for a substituted judgment.

[1] It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. (*Estate of Sharon,* 179 Cal. 447, 459 [177 Pac. 283].) [2] When a motion for a directed verdict, which should have been granted, has been denied, and a verdict rendered against the moving party, it is the duty of the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, to render judgment in favor of the party aggrieved, notwithstanding the verdict. (Code Civ. Proc., sec. 629.) Appellant is here contending that the power of the trial court in these matters is limited, by the provision of the section (*supra*), to granting a motion for judgment notwithstanding a verdict in those cases in which the antecedent motion for a directed verdict "should have been granted," and that, therefore, if *for any reason* the motion for a direction by the court was properly denied, the court is without power to grant the motion for judgment notwithstanding the verdict. Her first contention is that the motion for a directed verdict was properly denied, for the reason that the grounds on which it was based were not sufficiently stated, from which it follows, she argues, the court had no authority to grant the motion for judgment notwithstanding the verdict.

[3] Assuming, but not deciding, that the motion for a directed verdict was properly denied for the reason stated, it does not follow that such denial was a bar to the granting of the motion for judgment notwithstanding the verdict. Appellant was not injured. Had the motion for a directed verdict been granted on an assignment of grounds which was insufficient, and the contestant thereby deprived

199 Cal.—48

of the opportunity to meet objections, which should have been more precisely stated, by introducing other evidence, she would be in position to complain. But that did not happen. The motion was denied and the case was submitted to the jury, carrying with it the benefit of the court's ruling in the contestant's favor. We are of the view that section 629 of the Code of Civil Procedure relates to the granting of a motion for judgment notwithstanding the verdict in a case in which the motion for a directed verdict "should have been granted" on the evidence, and does not lend itself to the narrow construction appellant attempts to put upon it. Her first contention must, therefore, fail.

[4] Appellant's second contention is that the motion for a directed verdict in this case was properly denied, for the reason that the evidence was sufficient to take the case to the jury. The trial court had power to direct the jury to render a verdict in favor of the respondents, unless there was substantial evidence tending to prove all the controverted facts necessary to establish the contestant's case. It was not necessary that there should have been an utter absence of conflict in the evidence. To deprive the court of the right to exercise its power, if there was a conflict, it must have been a substantial one. (*Estate of Sharon, supra,* p. 459; *Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267].) The question as to whether or not at the time of the execution of the will the decedent Fleming was of unsound mind and incompetent to make testamentary disposition of his estate is disposed of by the contrary verdict of the jury. The appellant is not here complaining of that finding. The only issue, therefore, remaining in the case is that of undue influence on the part of the respondents over the mind of the decedent at the time of the execution of the will. The contention in that regard presented by the pleadings is, briefly, that the decedent was, on January 1, 1923, and prior thereto, weak and debilitated in body and mind from the use of intoxicating liquor for many years, which, with consequent dependence on his part on the Duncans, and ten years' employment by Mr. Duncan, causing a confidential relation in which respondents assumed to act as Fleming's confidential advisers, enabled them to easily influence, dominate, control and direct the

decedent, and that they did unduly influence him to make the will in their favor.

[5] The evidence does not support the contention of the appellant. Ruth Dover, the beneficiary under the will, is a widow with five children. She is a cripple, without adequate resources, and partly dependent upon her sister and brother-in-law, the respondents Kathryn and J. C. Duncan. [6] There is no evidence that she exercised any influence over Fleming. She sustained no confidential relation to the testator, so far as the record discloses, and did not participate in any way in procuring the execution of the will. No burden was, therefore, cast upon her to show that the will was not the result of undue influence. The burden of proof rested on the contestant. Therefore, unless the evidence was of such a nature that it was sufficient to legally support a finding of undue influence, the motion for a directed verdict should have been granted. (See *Estate of Baird,* 176 Cal. 381, 384 [168 Pac. 561].)

Appellant sought by her evidence to establish that the Duncans, and particularly Kathryn Duncan, brought about the execution of the will. Briefly, the facts are that Fleming was addicted to the use of strong drink from boyhood. He married the respondent Kathryn Duncan, then Kathryn Root, in 1895, and they lived together for fifteen years, when, because of Fleming's excessive use of liquor, they separated. Mrs. Fleming obtained a divorce, but there appears to have been an entire absence of bitterness between the two. During their separation, and after the granting of the divorce, they were on friendly terms, and subsequently lived together for about three years. Fleming, continuing his drinking, Mrs. Fleming again left him, and he was for a time committed to the State Hospital for treatment for his intemperance. In 1917, Mrs. Fleming married the respondent J. C. Duncan, and the two are now husband and wife. The friendly relations beween Fleming and his former wife continued after her marriage to Duncan, and Fleming was employed by Duncan, and apparently continued to work for him until the time of his death. He was a frequent and apparently a welcome visitor at the home of the Duncans. He was a competent and trustworthy workman, and Duncan gave him steady employ-

ment and paid him well. Mr. and Mrs. Duncan advised him, and apparently assisted him in saving and accumulating his wages. He frequently expressed his gratitude to them for the way in which they befriended him, and stated that he desired to make a will in favor of Mrs. Duncan. His offer was declined by both Mr. and Mrs. Duncan, who told him they did not need to be thus remembered, and that they did not want his money. In spite of frequent statements to that effect on the part of the Duncans, Fleming persisted in his desire to leave his estate to his former wife. Finally, both Mr. and Mrs. Duncan suggested that the decedent leave his property to Mrs. Dover, and the result was the making of the will here in question.

[7] There is no question but that the Duncans were so situated as to have had ample opportunity to dominate the mind of Fleming, if that were possible, and they had been so disposed; but mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act, and to such an extent as to affect the terms of the testament. (*Estate of Kilborn,* 162 Cal. 4, 11 [120 Pac. 762]; *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932].) In order to establish that a will has been executed under undue influence, it is necessary to show not only that such influence has been exercised, but also that it has produced an effect upon the mind of the testator by which the will he executes is not the expression of his own desire. The presumption of undue influence is not raised by proof of interest and opportunity alone. (*Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525].) The respondents Duncan have no interest in the will, and the record is silent as to the circumstances attending its actual execution. When or where it was executed, or who was present does not appear, and it is not shown that anyone knew the circumstances of its execution. As in *Estate of Clark,* 170 Cal. 418 [149 Pac. 828], it may be said that "the evidence utterly fails to reach the dignity of proof of that sort of pressure which overpowered the mind and mastered the volition of the testator at the very moment of the testamentary act. Without such proof no will should be held invalid on the ground of undue influence." It must

be borne in mind that the jury has found that Fleming was competent to make a will. [8] General influence not brought to bear upon the testamentary act, however controlling, is not such undue influence as will afford ground for setting aside a will of a person of sound mind. (*Estate of Donovan,* 140 Cal. 390, 394 [73 Pac. 1081].)

[9] Appellant has built her contention of undue influence exerted on the decedent in bringing about the execution of the will very largely on the theory that because of Fleming's excessive use of intoxicating liquor he was susceptible to the direction and dominance of the Duncans, for whom, as the evidence shows, he had an apparent affectionate regard. There is no doubt, from the evidence, that at times Fleming drank to excess, but he appears to have been a man of ordinary intelligence and capacity and was a competent and trustworthy workman. It is possible for long-continued use of intoxicating liquor to so permanently impair the intellectual faculties of the person indulging in it as to render him or her incompetent to do any legal act. "But the question, in a case like the one at bar, always is, not what *might* have been the mental condition of the testator at the time of the execution of the will, but what *was* that condition." (*Estate of Wilson,* 117 Cal. 262, 275 [49 Pac. 172 and 711].) On that question the record is silent. The evidence affords no pretense for contending that Fleming was intoxicated at the time of his testamentary act, nor does it support the theory of appellant that his mind was so impaired by the use of liquor as to render it susceptible to undue and improper influence in arranging his final affairs.

[10] Appellant insists that the will is unnatural, and that it is contrary to the expressed intention of the decedent, for which reasons, she asserts, undue influence in its procurement must be presumed. The contention rests upon the fact that she testified that her son had, upon occasions, indicated that he proposed to leave his money to her, and that prior to his death he had delivered to her the bank-book covering the deposit of his savings, under a belief that he was thereby transferring the money to her. There is no merit in the contention. (*Estate of Donovan, supra.*) If the will here could be considered unnatural, the objection would not be sufficient to overturn

it in the face of the established fact of testamentary capacity in Fleming at the time it was executed. (*Estate of Wilson, supra,* p. 278.) His will is not unnatural. He had no intimate friends other than the Duncans, and had no close relatives other than his mother. He apparently held her in affectionate regard, but rarely discussed his affairs with her. She was quite old, and there is evidence from which it may be gathered that she was sufficiently well cared for. These, and the other facts and circumstances surrounding the testator prior to and at the time of making his will, will constitute a reasonable explanation of his testamentary act, and a clear intent to do it with a full and present knowledge of conditions and consequences. (See *Estate of Wilson, supra.*) The fact that he said that his mother must not be informed of his making his will is of but little consequence, and falls readily within the explanation of his entire conduct just referred to.

There is much in the somewhat lengthy record which tends to shed light on the situation and relation of all the parties to this controversy and the circumstances under which Fleming's will was made. From our examination of the evidence, we are satisfied that the trial court was correct in its conclusion that Fleming's mind was not held under subjugation by the respondents, or either of them, and that the will was not brought about by the exercise of undue influence exerted upon him. The motion for a directed verdict should have been granted. Consequently the court had power, and it was its duty, to enter judgment in favor of the respondents below notwithstanding the verdict of the jury rendered on the issue of undue influence.

The judgment is affirmed.

Seawell, J., Finlayson, J., Richards, J., Shenk, J., Sullivan, J., and Curtis, J., concurred.