[Civ. No. 7713. First Appellate District, Division Two.—December 19, 1930.]

TISHA APPLEGATE, Administratrix, etc., Appellant, v. EUGENE SORRAL, Respondent.

Hibbard & Kleindienst for Appellant.

George H. Moore for Respondent.

STURTEVANT, J.—Late at night on the twenty-sixth day of November, 1926, Helen G. Munns was killed in an automobile collision. Later this plaintiff was granted letters of administration and commenced this action against the defendant to recover damages in favor of the heirs of the deceased. The defendant answered and a trial was had before the trial court sitting with a jury. The jury brought in a verdict in the sum of $151. From a judgment entered thereon the plaintiff has appealed and has brought up typewritten transcripts.

In her brief the plaintiff contends that the trial court erred in instructing the jury on the subject of damages. Among others the court gave an instruction as follows: "The court instructs the jury that the plaintiff cannot recover more than $150, plus nominal damages, and nominal damages have been spoken of as a trifling sum such as one cent, a few cents, or a dollar." If that instruction was properly given, the judgment should be affirmed. Otherwise it should be reversed. In this connection the defendant contends that the evidence in the record showed that no one of the heirs of the decedent nor all of them were entitled to recover anything, that is, that the evidence showed affirmatively that no one of the heirs suffered any pecuniary loss by reason of the death of Mrs. Munns. The decedent was survived by her mother, Mrs. Olga Bunk, who resides at Council Bluffs in the state of Iowa, and so far as the record discloses has never been in California. The decedent was also survived by her

husband. In her brief the plaintiff argues that the record shows that at least the mother and husband were entitled to relief in a sum larger than that awarded by the verdict. The record does not show when Helen G. Munns ceased to live with her own family, but it does show that as early as June 29, 1921, she was at Tulsa in the state of Oklahoma, and that while there she and William G. Munns intermarried. No member of the Bunk family was called as a witness. William G. Munns, the surviving husband, was called as a witness and made many conflicting statements as to when he got married and during what time or times he and his wife lived together as man and wife. The evidence is not contradicted to the effect that from February to August, 1926, the husband was in jail and that presumably during that time he and his wife were living separate and apart. In August, the husband left Los Angeles for Inyo County and later went to San Diego County. There is no evidence that after he left they lived together. He testified that for eight hours he and his wife were together during the last Saturday in August, 1926. That testimony was flatly contradicted by a witness who testified that during the month of August Mrs. Munns was not in Los Angeles at all. The husband testified that the last time he and his wife kept house together was in December, 1925, but the record does not show whether that housekeeping was for the period of one day or longer. Mrs Richards testified that for eighteen months prior to the death of the decedent the latter lived with Mrs. Richards and that during that time the decedent did not communicate with her husband nor with any other member of her family; and that during said period of time Mrs. Munns engaged an attorney to commence an action to obtain a divorce. Mrs. Richards further testified that during the time Mrs. Munns was with her, Mrs. Richards supported her. There was evidence that at times the decedent earned twenty-five dollars per week, but there is no evidence that at any time she made any contributions toward the support of any one of her kith or kin or that she received any assistance from any one of them. About the time Mr. and Mrs. Munns intermarried they went to Council Bluffs and there saw Mrs. Bunk. They never saw her afterward and the evidence does not show that any communications of any kind

or nature passed between the decedent and her mother or other members of the family. An undertaker was engaged by Mrs. Zuelke, a bystander. His bill for burying the decedent was $308; but there was no evidence that any one of the family contracted for said sum. After it had been incurred the decedent's mother paid $150 to the undertaker. In the case of *Bond* v. *United Railroads,* 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366], the Supreme Court entered upon a long discussion as to the elements and the amount of damage in this class of cases. At page 285 of 159 Cal. the court said: ''With regard to the danger of excessive verdicts from this rule, we can only say that the remedy is practically committed entirely to the judge who presides at the trial in the court below. If he does his duty he will carefully weigh the evidence himself and will not allow a verdict to stand for its full amount if he believes it gives more damages than the pecuniary loss that it may be reasonably supposed the plaintiff will actually suffer by being deprived of the services, earnings, society, comfort, and protection of the child.'' █ The duty so cast on the trial judge may properly be exercised either before the jury retires or later on an application to grant a new trial. Where, as here, there is no substantial conflict in the evidence regarding the intimacy of the relations existing between a decedent and her heirs the trial court is at liberty to weigh the evidence and direct the verdict in accordance with the opinion so formed by the trial judge. In *Estate of Sharon,* 179 Cal. 447, at page 459 [177 Pac. 283, 288], the court said: ''It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant where there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one. There are numerous decisions to this effect.'' (Citing them.) In the case of *Spencer* v. *San Francisco Brick Co.,* 5 Cal. App. 126 [89 Pac. 851], it was held that as there was no evidence to justify an award of punitive damages the trial court erred in refusing

to give an instruction to that effect; and thereafter, when a motion for a new trial was made, that the court also erred in denying the motion. No good reason appears why the trial court should allow the jury to bring in an excessive verdict and then put the parties to the trouble and expense of presenting a motion for a new trial. As stated by the court in *Bond* v. *United Railroads, supra*, it was the duty of the trial judge "to carefully weigh the evidence himself". In support of the judgment we must assume that he did so. Certainly there is nothing in the record to show that he abused his discretion in so weighing the evidence.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.