## FRIEDMAN *v.* MACY.

UNDER the confirmatory clause of the San Francisco Water Lot Act of March 26th, 1851, a lessee of the property known as the " Government Reserve," under lease from Capt. Keyes in 1849, is entitled at the termination of the lease to remove the buildings erected upon the property during the lease.

The effect of this clause, if not to give validity to the lease, was to secure to the lessee the possession and enjoyment of the property for the time and in the manner therein named. The intention was to confirm to the lessee the particular estate and interest mentioned in the lease, with the privileges and immunities provided therein.

The term " estate " as used in the confirmatory clause of the Water Lot Act of March 26th, 1851, is not restricted to the mere possession under the lease—the mere term of the lease—but means the right, title and interest of the lessee.

APPEAL from the Twelfth District.

The lease from Keyes to Shillaber was for ten years, from Nov. 27th, 1849, and the clause which governs the rights of the parties is in these words : " In case the United States shall claim and appropriate any portion or portions of the premises before the expiration of the term of this lease, then in such case the said lessee shall be allowed not less than ninety days to remove the buildings thereupon. Or the United States Government may, at its option, purchase the same upon the valuation of three men, selected as

aforesaid.  And the same conditions respecting the removal or purchase of the building shall hold at the termination of this lease."

Defendant appeals from the order granting the injunction.

*H. H. Haight*, for Appellant.

1. The Water Lot Act of March, 1851, was intended to confirm the Government lease which gave the lessee the right to remove buildings erected during the lease.  This act should be construed liberally in favor of the grantee or confirmee.  (*Hyman* v. *Read*, 13 Cal.)

2. The strict letter of the act shows this intention to confirm the lease.  The term " estate," as used in this act, means all the rights, interest and privileges of the lessee, and is not confined to the soil. (1 ·Burrill's Law Dic. " Estate ; " Preston on Estates, 20 ; 3 Cranch, 97 ; 2 Blac. 140 ; Bouvier's L. Dic. " Estates ; " 1 Greenleaf's Cruise, 44.)

3. The Legislature could not have intended to confirm simply the lessee's possession ; because there is nothing to show that he was in possession—and the fact is otherwise.  The Legislature must so have understood, as the act provides, that upon the lease the lessee might recover possession.

4. Whether the lease were void or not without the Act of 1851 is immaterial, because the Legislature had the power to confirm it if void.

*Shattuck, Spencer & Reichert*, for Respondent.

I.    What right had the lessee or his assignees under the lease before the passage of the Water Lot Bill ?

1. There was no reservation by the United States Government.

To constitute a legal reservation, there must have been an actual setting apart of the property for some particular use, and by authority of law.  (*Wilcox* v. *Jackson*, 13 Pet. 512.)

The lease in this case shows affirmatively that the premises were not required for, nor applied for the uses of the Government, other than as being made sources of revenue.

2. The Constitution of the United States, art. 4, sec. 3, declares that Congress shall have power to dispose of and make all needful

rules and regulations respecting the territory or other property belonging to the United States.    The grant of this right to Congress excludes its exercise by any other departments of the Government, except under the legislation of Congress.    (*United States* v. *Gratiot,* 14 Pet. 538 ; *United States* v. *Nicoll,* Paine's C. C. R. 649.)

II.  What interest in the premises in favor of the grantors of the defendants was created by the Water Lot Bill ?

The word estate, when used with reference to interest in lands, has regard to the term of the lease—estate in fee, estate for years, estate for life.

What estate is referred to in the act ?    The subject matter of the exception is the unexpired term of a lease for years, or what purports to be such, but is in reality a void lease, and the word estate must be considered as referring to the mere possession under such lease.

That the confirmation is of the term of the lease as distinguished from the covenants of the lease, the effects of the contrary theory will show.

If the act confirms one of the covenants of the lease, it must confirm all.    Let us see what these covenants are :

*1st Covenant.*   To pay rent to the Quartermaster at San Francisco.

*2d Covenant.*   To acquire and surrender at the end of the term all title and claims to the United States.   And this too when the fee simple is in the State of California, it being land covered by water and as admitted in the pleadings.

*4th Covenant.*   At any time after five years to surrender any portion of the property to the United States.

*9th Covenant.*   That even the State of California is not to participate in the uses or profits of the premises, unless she, without reservation, subscribe to all the conditions of this lease.

In other words, the State of California not only gives away the unexpired term of ten years, but according to the construction asked, in so doing, *ipso facto,* she gives away the fee simple to the United States.

The last clause of the sentence is a key to the whole.    The only object is to create sufficient " evidence of title and possession to

*Friedman v. Macy.*

enable the plaintiff to recover the lands so demised "—not to remove the buildings, not to enforce the covenants.

It does not confirm " the written instruments whereby such lease or leases were made," but only makes it sufficient evidence to recover possession of the "lands so demised."

The Legislature did not intend to ratify any of the covenants, but merely, in consideration of the buildings that had been erected, to confirm the possession.

If the Legislature did not intend to ratify the express covenant for removing the buildings, its intention was that they should not be moved.

In construing statutes, the intention of the Legislature is to govern, although such intent seems contrary to the letter. (*People* v. *Utica Ins. Co.*, 15 Johns. 358 ; *Minor* v. *Mechanics' Bank,* 1 Pet. 64 ; *Reddick* v. *Governor,* 1 Mass. 147.) The object and general intent of the Legislature is in all cases to be regarded in construing statutes. (*Jones* v. *Gilson,* 1 N. H. 272.)

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This suit was brought to enjoin the defendant from removing a building erected upon a lot situated in what is known as the Government Reserve, in the city of San Francisco. The case was heard upon the complaint and answer, and an injunction was granted as prayed for in the complaint. For the purposes of the action the matters set up in the answer are to be taken as true. The facts on both sides are clearly and explicitly stated. It appears that in 1849, E. D. Keyes, an officer of the United States Government, executed on behalf of that Government a lease of certain property, including the lot in question, to Theodore Shillaber, for the term of ten years. This lease contains a clause giving to the lessee the right to remove any buildings erected upon the property during the continuance of the lease.

It is contended, and seems to be conceded, that this lease was originally void ; that the property belonged to this State, and that the Government of the United States had no right or authority to lease it.

In March, 1851, the Legislature passed an act, commonly known as the Water Lot Act, containing the following provision : " The property known as the Government Reservation is exempt from the operation of this act, except that any estate held by virtue of any lease or leases, executed or confirmed by any officer of the United States, on behalf of the same, shall be and are hereby granted and confirmed to the lessees thereof, and the written instrument whereby such lease or leases were made, shall, in all actions brought by the lessees for the recovery of the lands demised, be sufficient evidence of title and possession to enable the plaintiff to recover."

The defendant has succeeded to the interest of the lessee in the lot in question, and the building which he claims the right to remove was erected by him for commercial purposes. The plaintiff acquired his right to the property under a grant from the State, made subsequently to the passage of the act to which we have referred.

It is unnecessary for us to consider the question of the right of the defendant to remove the building, upon the ground that it was erected for the purposes of trade. We are of opinion that the right to do so results from the language used in the confirmatory clause of the Act of 1851. The effect of this clause, if not to give validity to the lease, certainly was to secure to the lessee the possession and enjoyment of the property, for the time and in the manner therein named. The intention was to confirm to the lessee the particular estate named in the lease. The language is, " that any estate held by virtue of any lease or leases," etc., " shall be and the same are hereby granted and confirmed to the lessee thereof." Admitting that this language did not amount to a confirmation of the lease, so as to give effect to all its provisions, it was evidently intended to confirm to the lessee the same estate and interest, with like privileges and immunities, as provided for in the lease itself.

We do not understand the term estate to have been used in the restricted sense attributed to it by the respondent's counsel. Such is not its ordinary signification, and we do not feel at liberty to adopt a definition not justified by the usual acceptation of the term. " By the *estate* of any one," says Preston, " is to be

understood his situation, and the circumstances of his *tenancy* in regard to the *property* in which he has the *interest* in question." (1 Preston on Estates, 20.) " *An estate in land*," says Cruise, " means such an interest as the tenant hath therein. It is called in Latin *status*, because it signifies the condition or circumstances in which the owner stands with regard to his property." (1 Greenl. Cruise on Real Property, 44.) Burrill, in his Law Dictionary, gives this definition, and adds : " In this sense, *estate* is constantly used in conveyances, in connection with the words *right*, *title*, and *interest*, and is, in a great degree, synonymous with all of them." (1 Burr. Law Dic. 434.) " An estate for years," says Blackstone, " is a contract for the possession of lands or tenements for some determinate period." (2 Black. Com. 140.) Here the *estate* and the *contract* are regarded as one and the same thing.

We have no doubt of the correctness of the construction we have given to the act in question; and it follows that the judgment of the Court below must be reversed, and the bill dismissed.

Ordered accordingly.

FIELD, C. J. dissented.

A rehearing having been granted, and the case reheard, the Court, per the same Justices, adhered to its former opinion.

FIELD, C. J. dissented.