[Civ. No. 6533. First Appellate District, Division One.—February 27, 1929.]

JOSEPH W. REAY, as Administrator, etc., Appellant, v. DACIA BAILEY REAY, as Administratrix, etc., et al., Respondents.

Marshall Nuckolls, Robert Duncan and Monroe B. Kulberg for Appellant.

Dunne, Dunne & Cook for Respondents.

PARKER, J., *pro tem.*—In this action after a trial by jury the court below determined that the action was one in equity and, disregarding entirely the verdict of the jury, entered judgment for defendants, from which judgment the appeal is taken. At the outset, therefore, we are called upon to review the pleadings in some detail to the end that the nature of the controversy may be made clear and also the relief asked.

The subject matter of the action is certain personal property alleged to have belonged to Christiana G. Reay at the time of her death. It will be unnecessary to give any detailed description of this property other than to describe it as bonds and cash. The case went to trial on the first amended complaint. Subsequently plaintiff moved for permission to file a second amended complaint, which was denied. However, the plaintiff was permitted to amend in respect to the description of the property sought to be recovered; otherwise the first and second amended complaints were practically identical. ▇ In the complaint upon which the trial was had the plaintiff sets up his cause of action substantially as follows: After pleading the death of Christiana G. Reay and plaintiff's capacity as the administrator of her estate plaintiff then alleges the representative capacity of Dacia Reay as administratrix with the will annexed of the estate of Wallace R. Reay, deceased. Then follows the following allegation: "That prior to the death of said deceased, Christiana G. Reay, the defendants Wallace R. Reay and Dacia Reay, his wife, came into the possession of certain property of said Christiana G. Reay as agents of the said Christiana G. Reay and in trust for her, to hold

the same for the said Christiana G. Reay and to deliver the same to her upon her demand.''

Here follows a detailed description of the property, being personal property consisting of government and corporation bonds and preferred and common stocks, ''and also the income and accumulations therefrom, which said property is alleged to be of a total value of $120,000.00 plus the income and accumulations therefrom.''

Then follows this allegation: ''That the defendants and each of them in violation of their trust concealed and embezzled all of said property, with the fraudulent intent to appropriate it to their own use, and did fraudulently appropriate the same to their own use.'' The complaint closes with the allegation of demand by plaintiff administrator that defendants deliver over to him all of said trust property and the refusal of defendants to so deliver.

It is the contention of appellant that the cause of action thus stated sounds wholly in law as distinguished from an action in equity. He argues that it is an action in detinue as known to the common law, and that while the forms of action have been abolished under our procedure, nevertheless we retain the general distinction between actions at law and proceedings in equity. The respondent with as much vigor contends that the action as stated is one of equitable cognizance, as being an action under an alleged trust, wherein an accounting is sought.

From a mere reading of the complaint it will appear that plaintiff claims that defendants came lawfully into the possession of the personal property ''in trust for the decedent,'' to hold it for her and to deliver it up upon her demand, and that *in violation of their said trust* they secreted, concealed and embezzled all of the said property.

The relief sought is a return of the property to the administrator, and the appointment of a receiver during the litigation.

At this point it will be well to note the manifest idea of the pleader with reference to the cause of action relied upon. This is apparent from the history of the pleadings. The original complaint was in one cause of action and in precisely the same language as we find in the second amended complaint before us. The original complaint is followed nearly a year later by a first amended complaint wherein

the cause of action is again pleaded in the same language. These pleadings are referred to only to indicate the theory of plaintiff from the outset.

In *Dillon* v. *Cross*, 5 Cal. App. 766 [91 Pac. 439], the court says: "In the complaint before us, after alleging that plaintiff handed to defendant moneys to be kept, deposited and invested by him for plaintiff, it is alleged that defendant did deposit in a bank $1,100.00 of the said sums of money so received by him in trust for this plaintiff. It is thus inferentially alleged that defendant received this money in trust for plaintiff. In the complaint the money is repeatedly referred to as money held in trust for plaintiff. It thus appears that plaintiff was attempting to charge defendant as a trustee; and while the complaint is uncertain for not alleging directly what is alleged inferentially, it is not a case of a total absence of allegations of essential facts going to charge a trust."

So here the complaint is uncertain and indefinite in that it omits all details as to the nature of the trust or the purposes thereof, or any facts concerning these features. The complaint fails to disclose in this cause of action the author of the trust or the source of the funds. The plaintiff in this first cause of action simply and directly says to defendants: "You have personal property which you obtained under a trust for Christiana G. Reay and which under your trust you were to deliver to her upon her demand. You have violated your trust by embezzling and secreting the said property, and we demand from you the return of that trust property." No matter how the language of this cause of action is turned about or construed it says no more than this but always the same. If the cause of action had gone into the minutest detail and alleged specifically the trust, its creation, purpose and scope as well as the beneficiaries, the result in its last analysis would have been the same. This cause of action was manifestly on the theory of a trust which had been violated. If this is not true then no cause of action at all was stated. If the latter is the true situation, then appellant has not been injured and cannot be heard to complain.

Appellant urges that the cause of action was one at law upon the theory that when the pleading is scrutinized and considered with the relief prayed, the only thing involved

is personal property, specifically described, which plaintiff claims as property of his intestate, and the object of the suit is to recover the said property. From this standpoint he argues that the action is parallel with the old action of detinue, distinctively a common-law action. However, the complaint does not in this cause of action allege ownership or right of possession in the plaintiff's intestate save and except as accruing by and through the trust. If we accept appellant's theory we go a long way towards destroying all equitable jurisdiction. In a vast majority of actions distinctively equitable the relief sought is the obtaining of property, real or personal, and to say that the result obtained must characterize the jurisdiction, without reference to the proceeding, would be to ignore entirely the purpose of equity jurisdiction. Tested by the theory of appellant an action for specific performance would be removed from the equity side because it was sought thereby to give plaintiff the ownership of certain lands, and that as the ultimate result would place plaintiff in possession of land, therefore the action was on the law side as an action in ejectment. We cannot accept this claim.

The pleadings in the present case were carefully prepared and amended. Able counsel gave time and industry to plaintiff's claim and its presentation. When these counsel submitted to the court their cause on the claim that a trust existed and had been violated, the term trust, which has a well-known, definite meaning in the law, was advisedly used, and intended necessarily to mean just that, namely, a trust with all of its essentials and characteristics.

Appellant contends further that the nature of the action is not to be determined from the complaint alone, but that the issue as joined is to control. He claims that the defendants by their answer so made the issue that it became and was purely an issue at law.

Defendant Wallace Reay, in his answer, denied that the personal property involved was the property of Christiana G. Reay, plaintiff's intestate, or that she had any right, title or interest therein or thereto *at any time while the same was in possession of the defendants.* (Appellant's italics.) The defendant Dacia Reay in her answer admits and alleges that she has ever since been the owner and retained exclusive adverse possession of said property and the proceeds thereof

in so far as they have been converted into other property. It is from these two recitals of the answers of the defendants that appellant claims that the action has been changed from one in equity to one purely at law. We are unable to follow appellant in his argument and reach his conclusion.

In denying the existence of the trust defendant denied that Christiana G. Reay had any interest in the property. This denial raises no new issue, and does not supply anything to the complaint or change the issue tendered. The cases cited by appellant are not applicable to the case at bar and in nowise determine or control the course of decision here. We deem it unnecessary to discuss this phase of the case other than to note appellant's claim. ■ It is well settled that actions brought to establish and enforce a trust in personal property are proceedings in equity. (*Cauhape* v. *Security Sav. Bank*, 127 Cal. 197 [59 Pac. 589]; *Matter of Coburn*, 165 Cal. 202 [131 Pac. 352]; *Schooler* v. *Williamson*, 192 Cal. 479 [221 Pac. 195].)

Before leaving this first cause of action there is another feature of the case which bears directly thereon.

■ At the conclusion of the trial the court below gave the jury the following instruction, after detailing the averments of the first cause of action, and properly advising the jury as to the allegations thereof and where the burden of proof lay: "I now instruct you that there is no evidence in this case to establish such a trust as is referred to in such first count, or that the defendants, or either of them, came into possession of the property as such trustees or upon such understanding. In that state of the evidence it becomes my duty to instruct you, and you are instructed, that the plaintiff has failed to make out a case, and your finding must be in favor of defendants upon the first count or cause of action."

No question in respect of this instruction or its correctness is raised upon this appeal. On the record before us this instruction must be assumed to be supported and justified from the evidence or the lack of evidence. The verdict of the jury was a general verdict as follows: "We, the jury, find for plaintiff and that plaintiff is entitled to a return from defendants of the following described property and as damages for the taking and detention thereof as follows (describing property and damages)." We are bound to

assume that in reaching this verdict the jury obeyed the instruction of the court and that the verdict was in response to the other count in the complaint.

Without pursuing this branch further it will suffice to say that the following cases illustrate the principle: *Estate of Sharon*, 179 Cal. 447, 460 [177 Pac. 283]; *Schudel* v. *Helbing*, 26 Cal. App. 410 [147 Pac. 89]. Quoting from the Sharon case: "A verdict is directed by the court because the evidence is such that the court can say as a matter of law that no other verdict is reasonably possible. The direction to render a verdict in favor of one party is the decision by the court upon a question of law. Such decisions are within the exclusive province of the court. In giving a verdict upon such an order the jurors do not exercise discretion but act ministerially as the instrument by which the court prepares the record which will support the only judgment that can lawfully be given. They are no more at liberty to refuse obedience than is the clerk when he is directed to do the ministerial act of entering an order or judgment of the court."

From the doctrine of the Sharon case it follows that the verdict of the jury here must be tied to the second cause of action, and that there is no verdict returned on the first cause of action. As the court was empowered to direct any one member of the jury to sign and return a verdict in compliance with the instruction, so also was the court empowered to enter judgment on that cause of action for defendants irrespective of whether or not the jury returned any verdict or if the jury refused to return a verdict in compliance with the instruction.

There being no sufficient record before us to review the court's action in this respect the judgment of the court on the first cause of action would be affirmed, irrespective of whether the action were one in law or equity, because the court would have the power to enter judgment in a case at law where directions to return a verdict were not followed. We have, however, not relied upon this view to uphold the action of the court below. Rather we have given separate attention to the first cause of action to the end that the case might be treated as a whole, and the exact nature of the first cause of action determined should we consider the action in its entirety.

As has been sufficiently indicated, the complaint was in two counts. ■ We will now take up the second cause of action.

Plaintiff pleads at the outset the death of Christiana G. Reay and his capacity as administrator; likewise he sets up the capacity of Dacia Reay as administratrix of the estate of Wallace E. Reay, deceased. It is then alleged that during her lifetime Christiana G. Reay was the owner of certain personal property, being the same property referred to in the first cause of action, and that said property constituted practically the entire estate of the said decedent. The remaining allegations may be abstracted as follows:

That Christiana G. Reay was a widow from 1911 until her death in 1925, and had three sons, who were her sole heirs, and each of them was equally entitled to her bounty. At the time of the death of her husband she was of great age, to wit, of the age of seventy years, and was weak and infirm in body and mind, and was easily influenced and controlled by Wallace Reay from a time prior to the death of her husband up until her death. That she fully relied upon and implicitly trusted Wallace Reay in the management and control of her business affairs and property, and that he acted as her confidential adviser in and about and concerning the same. That Wallace Reay, with the object and intent of securing for himself alone all of the property of Christiana G. Reay and of depriving her thereof and of preventing his brothers from receiving any part thereof, made himself the constant and daily companion of his mother for years, and used acts and wiles and flattery upon his mother, and made false representations to her of and concerning his said brothers and the wives of said brothers, and poisoned the mind of the mother against them, and that thereby and by other means unknown to plaintiff Wallace Reay gained control and domination over the mind and affections of his mother, and gained an undue influence over the mind and affection of his mother. That said representations were false and that Wallace knew at all times that they were false. That while Christiana G. Reay was confiding and entrusting Wallace with the management of her property, and while Wallace was so managing and controlling the same, and while the mother was weak and infirm in body and mind and under the influence and control of Wallace

he took advantage of such confidence and trust reposed in him, with intent to gain all of the said property of the mother for his own use and benefit and for the use and benefit of his wife, and to prevent his brothers from ever securing or receiving any of the said property as heirs or otherwise. That by the use and exercise of the control which he held over his said mother by reason of his handling, managing, and controlling her said property, and by use of the trust and confidence so reposed in him, Wallace induced his mother to *turn over to him* all of her said property and estate, and Wallace thereby secured possession thereof, all in pursuance of his intention to deprive the said mother thereof and to prevent her other sons from ever securing any part thereof. That in order to induce his mother to turn over to him all of her property Wallace also represented to his mother that he would hold said property for her, and could thereby better control and manage the said property for her, and that he could and would thereby protect the mother from any demands or annoyances from the other sons concerning said property, and said Wallace also falsely represented to the mother that he would upon her death distribute and deliver over to each of the other two sons an equal one-third of said property. That he had no intention of so doing, but on the contrary he intended to keep the property for himself. That Wallace did not pay or give to his said mother anything whatsoever for said property, and the mother did not receive any consideration whatsoever for said property or any thereof. That the mother was *induced to deliver and did deliver* the property to Wallace solely by reason of the false representations and by reason of the undue and fraudulent influence exercised by Wallace over his mother and not otherwise. That the mother had no independent advice concerning the transactions relating to the delivery or turning over of the property to Wallace, nor concerning her rights in said property, nor the effect of her actions. That immediately *upon securing* the said property from his mother Wallace delivered and turned the said property over to his wife, defendant Dacia Reay, all for the purpose of defrauding his mother and his brothers thereof and for the purpose of concealing the property, but Wallace did not receive any consideration from his said wife, Dacia Reay, therefor. That the plaintiff

had no knowledge that the mother had delivered or turned over to said Wallace any of the property until after the death of the mother, and Wallace concealed from him the fact that the mother had done so, and also the fact that Wallace had possession of the property. That defendant Dacia Reay assisted and aided Wallace in concealing the said property, and neither of them ever asserted any claim to the property until after the mother's death. That after the mother's death Wallace and his wife, Dacia, claimed for the first time that the mother had made a gift of the property to Wallace. That Wallace and his wife, in violation of their trust and in breach of the confidence reposed in them, hid and concealed the property and refused to divulge anything concerning the same until after the mother's death, and did then only make the claim of gift when compelled under process of court. That during all of the times mentioned Christiana G. Reay was under the complete dominance, influence, and control of the said Wallace; that she would do or refuse to do any act or thing only if the same met with the approval of Wallace. That she was for many years prior to her death suffering from a mental and nervous disease which rendered her easily subject to the influence, control, and domination of Wallace, and during said period she was being treated by physicians for said nervous and mental disorder.

The prayer of the complaint is for judgment against defendants and each of them for the said property, and for any other property into which said property or the proceeds have been converted, together with the accumulations, interest, dividends, and accretions from said property, and if any of said property cannot be returned, that plaintiff have and recover judgment for the value thereof, and for such other and further relief, either general or specific, legal or equitable, as plaintiff may be entitled to in the premises, together with his costs of suit, and for an order of the court appointing a receiver to take possession of the property and keep and preserve the same and the proceeds thereof pending the action.

Appellant urges that this cause of action is distinctly an action at law, while respondent as earnestly contends that, as stated and pleaded, it is a proceeding in equity.

In support of his contention appellant argues that the test of whether any given action is of equitable cognizance is whether there is an adequate remedy at law, and if adequate relief can be had at law the right of plaintiff to proceed in equity is defeated. He further argues that in reality the true theory of this second cause of action is to recover personal property which is wrongfully in the possession of defendants, and that the primary right to be maintained, and the violation of which furnishes the cause of action, is in this case that of possession, and that this right is one cognizable in a court of law and needs no aid from a court of equity for its enforcement.

The second cause of action is taken up to a great extent with allegations of undue influence and fiduciary relationship. Appellant takes the position that these allegations are not the ultimate facts upon which he relied for relief but are superfluous, and can be given no weight in determining the nature of the action.

It appears from the record before us that prior to the commencement of this action Wallace Reay was examined in the probate court on a bill of discovery issued in the estate of Christiana G. Reay. It was learned from his testimony given at that time that Wallace claimed the property in controversy by virtue of various gifts from his mother. In appellant's brief we find this language: "And counsel for appellant in his professional zeal anticipated such a defense in answer to a complaint seeking recovery of the property." Nothing could be plainer than this. Appellant knew that respondent held the property under claim of gift, and brought his action to have it decreed that the gift was induced by fraudulent representations and the exercise of an undue influence.

The appellant again thus contends: "The salient point we wish to impress upon the court is that there is no allegation of a gift." He then proceeds: "and in the absence of an allegation of a gift the allegations as to undue influence and fiduciary relations must be treated as entirely irrelevant and as merely an immaterial narrative of the manner in which Wallace Reay and Dacia Reay acquired possession of the property sued for." The remainder of appellant's argument is based upon the assumption that the preceding contentions are true.

It will be unnecessary to again detail the allegations of this cause of action. Undue influence, the violation of a trust and confidence, the exercise of such undue influence for the purpose of depriving the mother of her estate, and the successful accomplishment of that intent are set out redundantly. In almost as many words a gift was alleged. If, as alleged, Wallace Reay already had possession of the property, as obviously follows from the allegation that he had the handling, management, and control thereof, nothing further could be done towards giving him possession. Therefore, if the words "turn over" were to have any meaning it was to convey the thought of a transfer. A transfer without consideration would, speaking generally, be a gift. Passing this, however, whatever its nature might have been, the pleading does affirmatively allege a transfer. In this connection it is alleged that Wallace fraudulently induced the mother to believe that he would hold the property until her death, and that he would then give a third thereof to each brother and retain a third himself. With mere naked possession this could not be done. That trusts are of exclusive equitable jurisdiction is not questioned (*Bacon* v. *Grosse*, 165 Cal. 492 [132 Pac. 1027]). Again, we find the allegation, prefaced by the averments of fraud and undue influence, that Wallace induced her mother to turn over to him all of her said property and estate in pursuance of his intention to deprive her thereof and to prevent the other sons from ever securing any portion thereof. As respondent contends, "there can be no quibble about the pleader's meaning. He means to say that Christiana, in turning over all her property and estate, stripped herself of her estate and was left with nothing. In using the term 'estate' he used it for what it signifies— 'the quantity of interest which a person has, from absolute ownership down to naked possession'" (1 Bouvier's Law Dictionary, Rawles' 3d Revision, p. 1075; *Friedman* v. *Macy*, 17 Cal. 230).

Summing it up, then, we have an action based either upon a gift unlawfully secured, or upon an express trust to hold and distribute after death. We consider this essentially and characteristically a proceeding in equity.

The relief asked was a judgment for the property and its proceeds, with such further relief, legal or equitable, as

plaintiff might be entitled to under the premises. In other words, the ultimate relief sought was a return of the property, to be effectuated through declaring invalid any transfer, or adjudging the existence of a trust therein existing in favor of plaintiff.

The fundamental theory on which equity acts is that of restoration—of restoring the defrauded party primarily, and the fraudulent party, as a necessary incident, to the positions which they occupied before the fraud was committed. Assuming that the transaction should not have taken place the court proceeds as though it had not taken place, and returns the parties to that situation (*Gorham* v. *Gilson,* 28 Cal. 483; Pomeroy's Equity Jurisprudence, 4th ed., sec. 910; *Broder* v. *Conklin,* 121 Cal. 282 [53 Pac. 699]; *Bancroft* v. *Bancroft,* 110 Cal. 374, 379 [42 Pac. 896]; *Espinosa* v. *Stuart,* 52 Cal. App. 477, 481 [199 Pac. 66]; Civ. Code, sec. 2224).

In *Wheelock* v. *Godfrey,* 100 Cal. 585 [35 Pac. 319], the court says: "The statement of appellant's counsel that the complaint contains matter which might have been omitted and that he demanded unnecessary relief is, in effect, but a statement that a different cause of action, sufficient for a recovery at law, with a demand only for such relief as a court of law might grant, might have been prosecuted. The answer must be that the phraseology of the complaint was adapted to the relief sought." The pertinency of the quotation to the case at bar is apparent.

Appellant finally urges that the nature of the action cannot be determined alone from the complaint but from the issues joined. To the extent the argument is presented we might agree. The defendant, answering specifically each and every allegation of the complaint, among other things pleads as follows: "Denies that Christiana Reay was ever the owner during her lifetime of any of the property referred to in plaintiff's complaint, or that she had any right, title or interest therein or thereto at any time while the same was in the possession of Wallace R. Reay or Dacia Reay, or that Christiana Reay was ever the owner or ever had any right, title or interest in or to certain other property described, etc." It is claimed that the issue thus raised was solely one as to the ownership and right of possession. It is apparent, however, that the issue was not changed

by the averments or denials of the answer. The denials were specific and followed categorically the allegations of the complaint. The particular denial quoted did, it is true, join issue on ownership of the property during the lifetime of Christiana Reay. However, the question of the ownership of Christiana G. Reay was merely preliminary to the main issue. Upon proof of such ownership during the lifetime of Christiana G. Reay the plaintiff would have been entitled to no relief in view of the other issues. At the trial and throughout the entire case it was admitted that Christiana G. Reay had been the owner of the property, and the theory of the case as a whole was, as indicated, that defendants had secured the same from her either by means of a gift brought about fraudulently through the exercise of undue influence, or in trust for plaintiff or the decedent.

Concluding this branch of the case, and as illustrating the theory of all sides as to the nature of the proceeding, it is noted that there was submitted to the jury the following question: "Was any transfer by Christiana G. Reay in respect to any property mentioned in the second amended complaint herein, if any such transfer was made, procured to be made by the exercise of any fraud or undue influence on the part of Wallace Reay?" We think this indicates clearly what the theory of the case was and what issues were joined. It may also be observed that the theory of this second cause of action was repeatedly throughout the trial stated by plaintiff to be fraud and undue influence. Both court and counsel so recognized it, and the record abounds with arguments of counsel for appellant wherein it is stated that "undue influence is the gist of the second cause of action." Not once, but many times, was this statement made, coupled with the claim that undue influence was a species of fraud, and that fraud and undue influence constituted the issues presented. At no time was the case treated as one in mere bailment.

Repeating, we hold the proceeding to be one in equity, and without further citation of authority, the cases heretofore noted will suffice.

In view of the modern procedure which provides for but one forum, wherein all relief is granted, the old lines have been somewhat obscured. Much general language has been used to the end that it is not always easy to demonstrate

just where equity begins. Equity, however, does cling tenaciously to its jurisdiction over matters of conscience, this jurisdiction controlling particularly in issues of fraud and undue influence.

The constitutional guaranty of a right to trial by jury has no application to cases coming within the equity jurisdiction, and a jury may not be demanded in such cases. (15 Cal. Jur. 331.) The text is supported by innumerable decisions.

Appellant contends that section 592 of the Code of Civil Procedure, makes no distinction between actions at law and in equity, but lays down a uniform rule applicable to legal and equitable actions alike, and that under this section appellant was entitled to a trial by jury in the instant case, even though it is held to be a proceeding in equity.

With this contention we do not agree (*Koppikus* v. *State Commissioners,* 16 Cal. 254; *Vallejo R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545 [147 Pac. 238] ; *Cline* v. *Superior Court,* 184 Cal. 331 [193 Pac. 929] ; *Schooler* v. *Williamson,* 192 Cal., at p. 478 [221 Pac. 195] ; *Pomeroy* v. *Collins,* 198 Cal. 20, at page 70 [243 Pac. 657] ; *People* v. *O'Connor,* 81 Cal. App., at page 520 [254 Pac. 630]).

It is next claimed by appellant that the court erred in denying him permission to amend his complaint after the commencement of the trial.

We do not deem it necessary to detail again the allegations of the complaint nor those of the proposed amendment. Suffice it to say that the proposed amendment changed entirely the theory of the case from one wherein lawful possession of defendants as alleged was turned into an allegation of unlawful possession. It is conceded here that plaintiff had not the absolute right to amend, but that it was a matter of the court's grace. Granting or denying leave to amend pleadings is a matter resting within the discretion of the court. It is well settled that this discretion should always be exercised to the end that a full and fair hearing might be accorded the litigants, and that where any substantial showing is made amendments should be permitted almost at any time. If justice will be subserved by permitting the amendment, and the rights of other parties are not prejudiced, a court cannot arbitrarily deny a motion to amend.

Justice in the abstract is an elusive thing and difficult to define. Justice, as we understand it, rests in law, and only through the due and regular processes of law can justice be secured. The trial of the instant case had proceeded through seven trial days when the amendment was offered. The amendment was not offered in an attempt to conform the pleadings with the proof. Appellant in his brief before us states that much evidence that had been properly excluded under the original pleadings could and would have been resubmitted under the new complaint. The trial court took the view that permission to amend would mean a recommencement of the trial, and the record here does not disclose that the fears of the court were groundless. The action had been instituted more than a year before, and issue joined about the same time. Amendments had been made and new issues framed about six months before trial. There was no showing made by plaintiff on the last offer to amend, being the one refused permission, other than the offer.

In the case of *Rogers Bros.* v. *Beck,* 43 Cal. App. 112 [184 Pac. 515], it is said by Justice Richards: ''The next contention of the appellants is that the trial court committed an abuse of discretion in refusing defendants leave to file an amended answer during the progress of the trial. This action was commenced on January 3, 1915; the answer of the defendants was filed on March 5, 1915; the cause came on for trial January 17, 1916. The amended answer was not proffered for filing until the trial of the case had proceeded up to the point where plaintiffs had fully put in their case. No sufficient reason was given for the defendant's delay in seeking to amend their answer, and this of itself would have been a sufficient ground for the court's refusal to permit the same to be filed.''

In *Scholle* v. *Finnell,* 167 Cal. 102 [138 Pac. 751], it is said: ''Without considering whether the proposed amendment embraced new causes of action the order was justified on the ground that the motion was made too late. It appears that the facts upon which the proposed amendments were based were known to plaintiff for over a year. There was no satisfactory showing why leave to amend was not sought earlier, and it was within the discretion of the court to refuse to allow them for this unreasonable and unex-

plained delay." See, also, *Emeric* v. *Alvarado*, 90 Cal. 444 [27 Pac. 356], wherein the court says: "The refusal of the trial court to allow an amendment to a pleading is not, *per se*, error. Such matters are within the discretion of the trial court, and this court will not interfere when such discretion has not been clearly abused."

In view of the principles thus enunciated the action of the trial court will not be disturbed in the case before us.

▆ It is finally claimed by appellant that errors of the trial court in the rejection of certain evidence demand a reversal of the cause.

We do not think that the rulings complained of warrant such action. The appeal is before us under the alternative method, and from those portions of the testimony presented in the briefs or supplements thereto it does not appear that all the evidence adduced is before us. For aught that appears we may presume that the excluded testimony was elsewhere or otherwise admitted if admissible. (*Dahlberg* v. *Dahlberg*, 202 Cal. 295 [260 Pac. 290].) The testimony offered and rejected consisted of oral statements alleged to have been made by the decedent Christiana G. Reay and by Wallace Reay, also deceased. The statements of the former were offered to show a state of mind and her intent with reference to her other sons and the disposition of her property. The statements of Wallace Reay were offered to show a preconceived intent on his part to deprive the remaining heirs of any share in the estate of the mother. In order to demonstrate our conclusion it would be necessary to review here the entire evidence, and this we decline to do. We have gone carefully through some thousand pages of transcript, and from the case as a whole we do not think the court erred in making the rulings complained of. Much evidence was allowed which bore upon the same questions and a wide latitude was allowed. *Ex parte* statements of Wallace Reay concerning his intent to deprive his brothers of any share in the mother's estate would not be independent evidence of any act carrying out that intent, and in the absence of some evidence on his part indicating the intent proof of the statement would be wholly immaterial.

Assuming that the court's rulings were erroneous in the instances complained of, no prejudical error resulted there-

from, and the trial would result no differently were this testimony admitted. The error, if any, has not resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.)

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 29, 1929.