[S. F. No. 16076. In Bank.—October 15, 1940.]

CANNIE CASNER, Appellant, v. DAILY NEWS COM-PANY, LTD. (a Corporation), et al., Respondents.

Freidenrich & Selig, Glikbarg, Wolf & Selig, Philip Selig, Jr., Philip Barnett and Francis Gill for.Appellant.

William M. Abbott, Cyril Appel, Ivores R. Dains, George M. Naus and Donald Seibert for Respondents.

THE COURT.—Two appeals are here for disposition: (1) An appeal from a judgment for the defendant Market Street Railway Company, entered June 30, 1937, and (2) an appeal from a judgment for the defendant Daily News Company, Ltd., entered July 2, 1937.

Motions to dismiss these appeals on the ground that they were taken too late were denied. (*Casner* v. *Daily News Co., Ltd.*, 12 Cal. (2d) 402 [84 Pac. (2d) 1032].) In the opinion on those motions, referring to the judgments appealed from herein, it was said at pages 405 and 406: ''Whatever irregularity or illegality may have attended the action of the trial court in ordering the entry of judgments on a directed verdict after the discharge of the jury (questions which are, of course, not here decided), it is clear that the judgments so

entered effectively terminated the trial proceedings in favor of the defendants . . . '' It was held that the appeals had been taken in time and inferentially that they could not be disposed of on their merits on the motions to dismiss.

On the merits of the appeals it is clear that said judgments were erroneous and that the opinion of the District Court of Appeal, First Appellate District, Division Two, prepared by Mr. Justice Sturtevant, correctly disposes of the questions involved. That opinion is adopted as the opinion of this Court, as follows:

"As the surviving widow of Mark Casner, the plaintiff commenced an action for damages for his wrongful death. The complaint alleges that he was struck by an automobile owned by the defendant Daily News Company, thrown on the track of the defendant Market Street Railway Company and run over by one of its streetcars. The plaintiff sued both corporations. The trial was commenced in April, 1937, before the court sitting with a jury. After all parties had rested each defendant made a motion for a directed verdict. Before the motion was ruled upon the plaintiff moved to dismiss the action without prejudice. This motion was granted, whereupon and on the same day, April 7, 1937, the jury was discharged. On April 26th the defendants respectively served and filed notices of motion to vacate the order of dismissal and for orders that their motions for a directed verdict be granted. These motions were granted on June 28, 1937. A formal judgment for the defendant Market Street Railway Company, and against the plaintiff was, on written direction of the trial judge, filed on June 29th, and entered on June 30, 1937. Also a formal judgment for the defendant Daily News Company was, on like written direction of the trial judge, filed July 1 and entered on July 2, 1937.

"On July 16, 1937, the plaintiff served and filed a notice of intention to move for a new trial, specifying all the statutory grounds. No order of the trial court disposing of this motion appears of record. It was therefore denied without order of the court under the provisions of section 660 of the Code of Civil Procedure.

"On September 14, 1937, the plaintiff filed a notice of appeal: (1) from the order of June 28, vacating the order of dismissal of date April 7, 1937; (2) from the judgment entered June 30; and (3) from the judgment entered July 2,

1937. The notice also specified an appeal from the order denying the plaintiff's motion for a new trial. As the order denying the motion for a new trial was not an appealable order, no further notice need be taken of the attempted appeal therefrom. However, its propriety may be inquired into on an appeal from the judgments. (Sec. 956, Code Civ. Proc.)

"It is clear that no order directing a verdict was made and no verdict was rendered. When the order vacating the order of dismissal was entered, the effect was that the cause of action then stood as one pending and undetermined in said court. The procedure that should have been followed thereafter is set forth in section 616 of the Code of Civil Procedure. That section provides: 'When prevented from giving verdict, the cause may be again tried. In all cases where the jury are discharged, or prevented from giving a verdict, by reason of accident or other cause, during the progress of the trial, or after the cause is submitted to them, the action may be again tried immediately, or at a future time, as the court may direct.' By following such procedure the cause could have been completely determined on its merits.

"However, instead of following the procedure so provided, the trial court heard motions for directed verdicts, granted the same, and caused judgments to be entered on said orders in favor of the defendants. The effect of a judgment rendered under similar circumstances was under consideration in *Vitimin Milling Corp.* v. *Superior Court,* 1 Cal. (2d) 116 [33 Pac. (2d) 1016]. At page 119 the court said: 'In the first place it appears without dispute that although a motion for a directed verdict as to the petitioner was made and noted by the minute order as "granted", no instruction to return a verdict was submitted to the jury; no request was made by the petitioner for an instruction to the jury to return a verdict; and no verdict was returned either by the jury, by the court, or at all, and there is no showing or intimation that the jury in this case would have refused to return a verdict for the petitioner, if it had been instructed so to do. That the court has the power to direct the jury to return a verdict in a proper case cannot be questioned. Nor is it disputed that the return of a verdict in such a case is a ministerial act. A verdict in any case must be in writing. (Sec. 618, Code Civ. Proc.) When the verdict is rendered an entry thereof must

be made in the minutes of the court. (Sec. 628, Code Civ. Proc.) As to these requirements there is no distinction between a verdict returned by the jury after deliberation and one returned by direction of the court. In each case the verdict serves as a basis for the entry of a judgment thereon. In the absence of a verdict entered as required by law there is no finality to the proceedings. The order merely granting the motion for a directed verdict is not an appealable order. (Sec. 963, Code Civ. Proc.) And we know of no authority in law for the entry of a judgment which would, in the absence of a verdict, in any way constitute a judgment on a verdict. The purported judgment on May 4th was therefore void on the face of the record and was properly set aside by the respondent judge.' For the same reasons it is clear that the judgments appealed from, that is, the formal judgments entered respectively on June 30, 1937, and July 2, 1937, were void.

''The defendants state several facts that were present in the Vitimin case which they claim distinguish that case from this. Conceding that those facts do distinguish it, nevertheless the clear language contained in that case shows it did not rest on the facts which defendants call to our attention.

''The defendants assert the error, if any, in causing the judgments complained of to be entered, was not prejudicial. (Const., art. VI, sec. 4½.) However, we think that assertion cannot be sustained. When, on June 28, 1937, the order was made setting aside the order of dismissal, such order became effective at the moment it was entered and thereafter remained in force as an effective restoration of the cause as an action pending and undetermined in said court. (*Casner* v. *Daily News Co., Ltd.,* 12 Cal. (2d) 402, 405 [84 Pac. (2d) 1032].) The procedure to be followed was a trial *de novo.* (Code Civ. Proc., sec. 616.) No such new trial was had. No stipulation waiving a trial *de novo* or consenting to the use of the record in the first trial was entered into. Therefore the judgments appealed from determine issues that have never been tried. Such judgments are a miscarriage of justice. (*Palmer* v. *Tschudy,* 191 Cal. 696, 703 [218 Pac. 36].)

''On September 14, 1937, the plaintiff filed a notice of appeal from the order made June 28, 1937, vacating the order of dismissal. That is, the notice was filed seventy-eight

days after the entry of said order. The appeal from that order was not taken in time. (Code Civ. Proc., sec. 939.) Therefore said order is still in effect. (*Casner* v. *Daily News Co., Ltd., supra.*) The appeal from that order is dismissed.

"The order denying a motion for a new trial is not an appealable order and the appeal from that order is also dismissed."

The foregoing is entirely in harmony with the holding in *Vitimin Milling Corp.* v. *Superior Court, supra.*

The case of *Wells Fargo Bank and Union Trust Co.* v. *Broad,* 3 Cal. App. (2d) 45 [39 Pac. (2d) 241], relied on by the appellants, is easily distinguishable. There, at the conclusion of the evidence, the plaintiff moved for a directed verdict on the ground that under the admitted facts it was entitled to judgment. During the argument on the motion the court raised a point on which it concluded that the plaintiff could not recover, discharged the jury, and entered a minute order dismissing the action. About three months thereafter the order of dismissal was vacated on motion and the cause was set down for further hearing. No additional testimony was introduced and the court ordered judgment for the plaintiff as prayed. The facts appear to have been admitted. The order vacating the order of dismissal was held to have been an appealable order and, as no appeal had been taken therefrom, the order had become final. Necessarily the case was then pending and undetermined. The trial court very promptly set it down for further hearing. At the time so set the cause was apparently submitted to the court on the undisputed facts theretofore produced, and judgment was entered in accordance therewith. No motion for a directed verdict appears to have been granted. The District Court of Appeal held that the power of the court to order judgment for the plaintiff "was the same as if it had granted plaintiff's motion for a directed verdict". As no directed verdict had been granted, the case was not subject to the rules laid down in the Vitimin Milling Company case and approved in the present opinion.

Counsel for the defendants charge the District Court of Appeal with a misstatement of the record. It is boldly declared that the statement in the opinion which has been adopted that before the motion for a directed verdict was ruled upon the plaintiff moved to dismiss the action without

prejudice is "wrong". The statement so denounced is copied *verbatim* from our opinion in *Casner* v. *Daily News Co., Ltd., supra*, and is a correct recital of the fact. The record shows on pages 308 and 309 of the reporter's transcript that it was during a recess of the court and at an informal conference between the judge and counsel in chambers that the judge stated that he would grant the motions. But upon the re-convening of court with the jury present, the plaintiff im-mediately and prior to the ruling on the motions for directed verdicts, made the motion to dismiss the action without preju-dice, which was granted forthwith.

The judgments are reversed.

EDMONDS, J., Dissenting.

Ordinarily, a dissenting opinion upon a question concern-ing procedure only adds uncertainty in a field where the profession's aim should be toward simplification. But the decision of the majority in the present case, it seems to me, gives a plaintiff rights which are not consistent with fair dealing and strikes down long established principles relat-ing to the administration of justice.

The result is reached by the application of the supposed rule that there can be no judgment rendered upon a di-rected verdict unless the jury actually proceeds, under compulsion of the court, to return the prescribed verdict. This rule is derived from certain language in the case of *Vitimin Milling Corp.* v. *Superior Court,* 1 Cal. (2d) 116 [33 Pac. (2d) 1016], quoted in the majority opinion. If on its facts that case were in point, I should be reluctant to question its controlling effect herein. However, as will be seen, not only are the facts of the two cases substantially dis-similar, but the proposition stated in the Vitimin Milling Corp. case is in flat conflict with expressions in prior decisions of this court and the District Court of Appeal, none of which was considered in the opinion. Under these circumstances the unreliability of the case as a precedent, and the confusion engendered in an important phase of our procedural law, justifies a reexamination of the point.

The governing principle received its first clear statement in the leading case of *Estate of Sharon,* 179 Cal. 447, 460 [177 Pac. 283] : "The direction to render a verdict in favor of one party is the decision of the court upon a question of law. Such decisions are within the exclusive province of the court.

In giving a verdict upon such an order the jurors do not exercise discretion, but act ministerially as the instrument by which the court prepares the record which will support the only judgment that can lawfully be given. They are no more at liberty to refuse obedience than is the clerk when he is directed to do the ministerial act of entering an order or judgment of the court. The verdict so signed by one of the jurors who is appointed as foreman by the court and who signs in obedience to the order, though in form the act of the jury, is really and in law the act of the court.''

The square holding of the Sharon case is that since the jury has no authority in the matter, and acts only mechanically or ministerially to carry out the order of the court, it is the order of the court which is legally significant and not the act of the jury. The failure or refusal of the jury to act cannot affect the power of the court; and if the jury will not bring in a verdict, the court may give judgment without their assent. The absence of a written verdict in such a case is at most a defect of form; and where the absence is a result of contumacious refusal by the jury, it is not a defect at all, since the court has full power to give the necessary judgment. Subsequent decisions have followed this reasoning and have applied the rule without any question. Thus, in *Umsted* v. *Scofield Engineering Construction Co.*, 203 Cal. 224, 226 [263 Pac. 799], the court made a special finding on the basic issue, and entered judgment against plaintiff on the finding, without directing a verdict. We said: ''Although the court below did not follow the procedure generally adhered to in such cases and direct the jury to bring in a verdict for the defendant, which would serve as the basis for its judgment, a judgment entered by the court upon the basis of a special finding where the court is of the opinion that the state of the evidence is such that there is only one judgment which can lawfully be rendered, is to be given the same effect as a judgment entered by the court upon a directed verdict. Without regard to the procedure followed, the determination is, in law, the act of the court.'' A similar situation was presented in *Engelberg* v. *Sebastiani*, 207 Cal. 727, 729 [279 Pac. 795], where the court ordered that interest be added to the judgment, without submitting the matter to the jury. We declared that ''since the jury would be without right to disregard the court's direction, which would leave them no

discretion in the matter, it can make no substantial difference to defendant whether interest is added to the judgment by the verdict of the jury rendered pursuant to the direction of the court, or by the court instructing the clerk to enter judgment for the amount of the verdict plus interest''.

The District Court of Appeal, in a number of recent decisions, has spoken unequivocally to the same effect, namely, that the court may enter judgment where a directed verdict is proper, irrespective of whether the jury actually returned the verdict. (*Seperman* v. *Lyon Fire Proof Storage Co.*, 97 Cal. App. 654, 656 [275 Pac. 980]; *Reay* v. *Reay*, 97 Cal. App. 264 [275 Pac. 533]; *Wells Fargo Bank and Union Trust Co.* v. *Broad*, 3 Cal. App. (2d) 45 [39 Pac. (2d) 241].) Many cases from other jurisdictions are to the same effect. (See *Duluth Chamber of Commerce* v. *Knowlton*, 42 Minn. 229 [44 N. W. 2]; *Dubuque Fruit Co.* v. *C. C. Emerson & Co.*, 201 Iowa, 129 [206 N. W. 672]; *Gammon* v. *Abrams*, 53 Wis. 323 [10 N. W. 479]; *Marion* v. *Home Mutual Ins. Assn.*, 205 Iowa, 1300 [217 N. W. 803]; *Bee Building Co.* v. *Dalton*, 68 Neb. 38 [93 N. W. 930, 4 Ann. Cas. 508]; *Kirshenbaum* v. *Massachusetts Bonding & Ins. Co.*, 107 Neb. 494 [186 N. W. 529]; *Schaffer* v. *Deemer Mfg. Co.*, 108 Miss. 257 [66 So. 736]; *Houston* v. *Holmes*, [Tex. Civ. App.] 262 S. W. 849; *Zachary* v. *City of Uvalde*, [Tex. Com. App.] 42 S. W. (2d) 417; *Consolidated Gold etc. Co.* v. *Struthers*, 41 Mont. 565 [111 Pac. 152].)

All of these cases recognize that the normal procedure is for the jury to return the directed verdict, and that to enter judgment without it is irregular. But they refuse to give to this formal irregularity the effect of destroying an otherwise proper judgment, and in so deciding they follow the universally accepted doctrine that immaterial errors of form which do not go to the merits of the proceeding may be disregarded in the interest of justice.

The opinion in *Vitimin Milling Corp.* v. *Superior Court* does not purport to overrule any of these decisions, and the broad statement of the rule laid down in that case must, in the light of the background of authority and principle, be deemed inadvertent, particularly in view of the peculiar facts of that case and the other independent ground of decision. The proceeding was one in prohibition to restrain the Los Angeles superior court from proceeding further with the

trial of an action. The original action was brought against a number of defendants, including petitioner, and went to trial in department 11 of the Los Angeles superior court. On January 18, all defendants moved for directed verdict. The court granted the motion as to petitioner, entered a minute order to this effect, and denied it as to the other defendants. On that same day the jury retired for deliberation, reported inability to agree, and thereupon, by *stipulation,* they were discharged and a mistrial ordered. On January 20 the court signed and filed an order that the motion for directed verdict on behalf of petitioner ''be granted''. On May 3, the cause came on for retrial as to all defendants before respondent judge in department 16. On May 4, while this retrial was in progress, the judge sitting in the other department (No. 11) signed and filed a judgment for petitioner reciting the prior granting of the directed verdict in its favor. Counsel for petitioner, in the trial in department 16, then objected to any further evidence as to his client, claiming that the judgment in its favor was *res judicata.* Counsel for plaintiff in the action then moved to set aside this judgment of May 4 on the ground, among others, that the jury had not returned a verdict in favor of petitioner. The court granted this motion and continued the trial until May 22. Thereafter, on May 10, 1933, the judge in department 11 sought to remedy the situation by filing a *nunc pro tunc* order correcting the original order granting mistrial to read that it was ordered as to all defendants except petitioner. Petitioner, relying upon this *nunc pro tunc* order, then sought a writ of prohibition in the District Court of Appeal to restrain the trial in department 16. The matter was heard on demurrer, and a peremptory writ was ordered to issue. A hearing was granted in this court, and the writ was denied.

The above recital shows the unusual and peculiar complications which were involved in the Vitimin Milling Corporation case, and not in the instant case: for example, the fact that the directed verdict was given only for one defendant among several, and was followed by a discharge of the jury by stipulation of all parties; the fact that two different judges sitting in two separate departments were both attempting to act in the matter at the same time; and the fact that the case did not involve an appeal on the merits, but an application for the extraordinary remedy of prohibition. These differences are important in any attempt to appraise the language of the

opinion. A different situation would have presented if the entire matter had, as in this case, been before a single department and judge, without the complicating factor of an attempt by a judge of one department, by a *nunc pro tunc* order, to interfere with the actual trial of a case in another department. (See *Williams* v. *Superior Court,* 14 Cal. (2d) 656 [96 Pac. (2d) 334], where this court recently declared that it was beyond the jurisdiction of one department to interfere with another.) And entirely different considerations govern the issuance of a writ of prohibition and the determination of an appeal. It was by no means clear that department 16 had no *jurisdiction* to continue in the trial of a case regularly assigned and then in progress, merely because the judge in department 11 belatedly made a *nunc pro tunc* order clarifying the former confusion in the procedure; and reluctance to issue the extraordinary writ of prohibition in such a situation is understandable and justifiable. This is indeed the important ground for the decision in the Vitimin Milling Corporation case, as the court itself states: ''The second reason why the petition herein must be denied is that the respondent court has jurisdiction of the parties, including the petitioner, and the subject-matter of the action. Pleas of *res judicata* and estoppel are defensive matter, and the respondent court has jurisdiction to determine the merits thereof when interposed properly by pleading or proof. (*United Security etc. Co.* v. *Superior Court,* 205 Cal. 167 [270 Pac. 184]; *Baird* v. *Superior Court,* 204 Cal. 408 [268 Pac. 640]; 21 Cal. Jur., p. 583.) Any alleged error in ruling upon the plead would be reversible on appeal. This alone would be sufficient ground upon which to deny this petition, but since the other questions are in the case they have been determined for the guidance of the trial court.''

This very language of the Vitimin Milling Corporation case suggests the appropriate result in the instant case. This is an appeal, not a proceeding in prohibition; the merits are before us here, and in an appeal on the merits we are bound, both by our Constitution (art. VI, sec. 4½) and by settled principles of practice, to disregard formal, immaterial errors in the proceedings below and to affirm judgments which are substantially correct.

Quite apart from the foregoing considerations is another and compelling reason for affirmance of the judgment herein.

If the ordinary practice had been followed, the court below, after announcing its determination to grant the motions of defendants for directed verdict, would have ordered the jury to return such a verdict, and the jury would have acted accordingly. Defendants made every effort to follow this ordinary practice, and were guilty of no neglect of any kind. How, then, could they lose the benefit of the trial and its successful termination in their favor?

It makes little difference, in this connection, whether we decide that the trial judge had actually granted the motions for directed verdict, or signified his intention of granting them, or merely indicated that he looked favorably upon them. Voluntary dismissal by the plaintiff in any of these situations is entirely inappropriate.

If the proposition were baldly stated that a plaintiff may bring a cause to trial, and go through the entire presentation of the case for both sides, and then, suspecting or learning of a probably adverse decision, may with impunity dismiss the suit and commence all over again, it would cause the greatest astonishment among the bench and the bar. The gross injustice to the defendant in such a situation is obvious: he is amenable to an adverse judgment, but a judgment in his favor may be snatched away from him by alert counsel for his opponent after all the effort and expense of a trial. But the injustice to the defendant is not the greatest evil of such a practice; the wasting of the time and money of the people in a fruitless proceeding in the courts is something far more serious.

So obvious is the policy involved that it seems hardly necessary to discuss it; but it should be noted that courts, both here and elsewhere, have expressed themselves strongly on this precise point. In *Rutherford* v. *Peppa,* 53 Cal. App. 309 [199 Pac. 1111], the court said: ''We shall dispose first of the contention of appellant that the court had no power to render a judgment in favor of the defendant in view of the fact that the plaintiff had filed a dismissal of the action before judgment. Section 581 of the Code of Civil Procedure, relied upon by appellant, provides that the plaintiff may dismiss his action at any time before trial. But in the present case the dismissal was not filed until the plaintiff's evidence was in and defendant had submitted the case, and the court had stated what its ruling would be on the evidence. At that

time it was too late for the plaintiff to dismiss his action. (*Floody* v. *Great Northern R. Co.*, 104 Min.[n] 517 [116 N. W. 107, 932]; *Judge of Probate* v. *Abbot*, 13 N. H. 21; *Cohn* v. *Rumely*, 74 Ind. 120; *Walker* v. *Heller*, 56 Ind. 298; Ann. Cas. 1913D, 525, note.) The trial court had clearly stated its intention to find for the defendant and had granted the motion for a nonsuit when the plaintiff attempted to dismiss his action. The rule contended for by plaintiff would work a hardship on a defendant and subject him to endless litigation in cases where the trial court had decided that there was no merit in the action. We are therefore of the opinion that the trial court had the power to render a judgment despite the attempted dismissal by the plaintiff which came too late." (P. 311.)

The court in *Yarn* v. *Ft. Dodge etc. R. Co.*, 31 Fed. (2d) 717, was even more emphatic: "The practice of first ascertaining the views of the court, after a fair trial, and then dismissing and suing again, if such views are adverse, should not be encouraged. . . . The courts are not organized for the purpose of permitting the plaintiff in an action to experiment with a certain state of facts for the purpose of ascertaining the opinion of the court as to the law applicable to the same and then permit him to withdraw from the scene of conflict and state a new cause of action and mend his licks in another direction. Such a policy, if adopted, would be productive of much mischief and should not be tolerated." Many other cases are to the same effect.

I think it is most unfortunate that support should be given to such maneuvers by the present decision of this court.

Gibson, C. J., concurred.

Rehearing denied. Gibson, C. J., and Edmonds, J., voted for a rehearing.